MICHIGAN CENTRAL RAILROAD CO. v. STATE OF MICHIGAN.

EMINENT DOMAIN—CORPORATIONS—MICHIGAN CENTRAL RAILROAD —SPECIAL CHARTER—REPEAL—DAMAGES RECOVERABLE.
Upon the repeal of the special charter of the Michigan Central Railroad Company, pursuant to the right reserved by section 39 of the act incorporating the company (Act No. 42, Laws 1846), the company is entitled to recover "all damages sustained by reason of such repeal," including compensation for the loss of its franchise.

Certiorari to Wayne; Mandell, J. Submitted December 18, 1906. (Docket No. 38.) Decided April 30, 1907.

Case by the Michgan Central Railroad Company against the State of Michigan to recover damages for the repeal of plaintiff's charter. There was an order overruling a demurrer to the declaration, and defendant brings certiorari. Affirmed.

John E. Bird, Attorney General (Thomas E. Barkworth and Otto Kirchner, of counsel), for appellant.

Henry Russell (O. E. Butterfield, Ashley Pond, John G. Milburn, and John G. Johnson, of counsel), for appellee.

HOOKER, J. The plaintiff, a railroad company, was incorporated by a special act of the legislature of Michigan, approved March 28, 1846, entitled "An act to authorize the sale of the Central Railroad (then owned by the State) and to incorporate the Michigan Central Railroad Company." Act No. 42, Laws 1846. The thirty-sixth section of the act was as follows:

"The State may, at any time after the first day of January, eighteen hundred and sixty-seven, purchase, and take from said company, said railroad, and all the property, effects and assets of said company, and said railroad and the appurtenances thereof, and all the estate, property, effects and assets of said company (subject to all existing mortgages or other liens thereon on account of loans, the proceeds of which shall have been invested in the said road and other works of said company) shall fully and forever vest in and become the estate, property and effects of the State, to all intents and purposes, so soon, and whenever after the day aforesaid, the State shall pay, or cause to be paid to said company, the value of the entire stock of, and shares in said company, at the market value of such stock or shares, and ten per cent. in addition to such market value of said stock or shares; * * * and thereupon the corporate powers and franchises of said company shall wholly cease, and the rights and franchises vested, or which may vest in said company under or by virtue of this act, shall not in any manner be prejudiced or affected save as herein provided, or by judicial proceedings, or by a repurchase of said railroad, to be made by the State in manner aforesaid."

The thirty-ninth section of the act was as follows:

"The State reserves the right, at any time after thirty years from the passage of this act, by a vote of two-thirds of each branch of the legislature, to alter, amend or repeal the same: *Provided*, That said company shall be compensated by the State for all damages sustained by reason of such alteration, amendment or repeal."

At its session held in October, 1900 (Act No. 2, Pub. Acts 1900), the legislature passed an act reading as follows:

"SECTION 1. That act number forty-two of the session

laws of eighteen hundred forty-six, entitled 'An act to authorize the sale of the Central Railroad, and to incorporate the Michigan Central Railroad Company,' approved March 28, eighteen hundred and forty-six, and all acts amendatory thereto, be and the same are hereby repealed, said repeal to take effect and be in force from and after the thirty-first day of December, nineteen hundred one: *Provided*, That the right to institute proceedings against the State for the determination of the damages, if any, which it may sustain by reason of such repeal is hereby reserved to said Michigan Central Railroad Company. And further *Provided*, That the right of said company to receive compensation from the State on account of this repeal shall not be prejudiced by the voluntary surrender of its charter and its reorganization prior to said thirty-first day of December, nineteen hundred one, under the provisions of section six thousand two hundred and twenty-five, Compiled Laws of eighteen hundred and ninety-seven."

And by an act approved on the same day as the foregoing (Act No. 4, Pub. Acts 1900) the following became the law of the State:

"SECTION 1.   Whenever the charter of any railroad company organized, created, or existing under and by virtue of the provisions of any special act enacted prior to eighteen fifty, which provides that the State shall make compensation for the damages sustained in case of repeal, shall be withdrawn or revoked by the repeal of such special act, such railroad company may, within one year from and after the date that such repeal shall go into effect, and not thereafter, institute an action of trespass on the case against the State of Michigan, in the circuit court for the county of Ingham, Kent, or Wayne, for the recovery of any damages which it has sustained, and to which it is entitled by reason of such repeal of such special charter, if any damages be sustained.   Process shall be served upon the governor, and the case shall proceed in accordance with, and be governed in all respects by, the law and practice governing similar actions between individuals in this State.

"SEC. 2. Upon final judgment being rendered, the same may, upon application by such railroad company, be certified by the clerk, and under the seal of the court in which the same is entered or to which the same has

been appealed or removed, to the auditor general; and he shall thereupon issue his warrant for one-third of said judgment with accrued interest; and during the next following year he shall issue his warrant for another one-third of said judgment with accrued interest; and during the next following year he shall issue his warrant for the balance of said judgment, with accrued interest; unless provision for earlier payments, or an immediate satisfaction of said judgment shall be made by the legislature. Said warrants shall be paid by the State treasurer to the railroad company entitled thereto or to its assigns out of the general fund. The auditor general shall add to and incorporate the amount paid each year on account of said judgment in the next succeeding State tax, and the money collected therefrom shall be placed to the credit of the general fund to reimburse it for the moneys thus paid.

"SEC. 3. All acts and parts of acts in any way inconsistent with the provisions of this act are hereby repealed."

We understand defendant's main contention to be that the reservation of the right to purchase within 30 years implied an intent to divest the State of the right to amend, alter, or repeal this statute for that period; that otherwise section 39 was unnecessary; further, that this legislation could not have the effect of depriving the State of the right to condemn this property, and all rights in or connected with it, under its power of eminent domain, which right existed as well during the 30-year period as afterward; further, that inasmuch as the exercise of the power of eminent domain would or might have the effect of depriving the plaintiff of its tangible property, and all rights attaching to or growing out of it, for compensation, and that section 39, in authorizing amendments, alterations, and repeals upon the same terms, was wholly useless, unless we say, as it is contended that we should therefore say, that its object, or at least its effect, was to provide for a condemnation by repeal, upon better terms for the State, than the rules relating to eminent domain would permit under that procedure. Or, in the language of the brief:

"A fair interpretation of the act must proceed upon the theory that the State intended, by its reservation, to reserve to itself a substantial right. If the State must pay for the franchises destroyed in the exercise of its right to repeal, the right intended to be reserved had, we submit, no substantial value. The reservation of the right to repeal was, in that case, wholly useless, because the State could have deprived plaintiff of its franchises by paying for them in the exercise of its eminent domain."

By the terms of a contract, valid when made, the State conferred upon the Michigan Central Railroad Company, for a valuable consideration duly paid, corporate existence, and power and authority to acquire, own, and use property in a way not given to private persons, and granted to it a railroad theretofore existing, owned by the State. This was a grant in perpetuity, unless such right was modified or restricted in the act itself. It was so modified and restricted in important particulars. The natural inference to be drawn from sections 36 and 39 is that the State intended to assure to the railroad company immunity from interference with its rights, subject to a reserved right of repurchase by the State upon specified terms, if acted upon within 30 years, and, if not, then to a conditional right of alteration, amendment, or repeal thereafter; one of the conditions being compensation by the State for "*all damages* sustained thereby." We are of the opinion that there is nothing ambiguous in the law, and that, if construed according to the common and approved usage of the language adopted, as required by 1 Comp. Laws, § 50, it can have no other meaning than that hereinbefore suggested.

We are asked to say that, inasmuch as it is a rule of law that a legislature cannot deprive its successors of the right to exercise the power of eminent domain, we must assume that it did not intend to do so, and therefore the provision of section 39 was unnecessary, unless it is to be construed as a limitation upon the measure of damages which the State would be required to pay, had its right to amend, alter, or repeal been left to rest on the power of

eminent domain, and that it was for this reason that section 39 was made to specifically provide that after 30 years the State might alter, amend, or repeal the charter. We understand that the interpretation of statutes involves an effort to ascertain the actual intent of the legislature, and whatever limitations there may be upon the method, and however much rules of construction may generally be an aid, if the actual intent clearly appears, the courts will not be justified in saying that a different, and clearly inconsistent, intent must be found. This accords with the rule that the intention of the legislature, when discovered, must prevail, any existing rule of construction to the contrary notwithstanding. *Brown* v. *Barry*, 3 Dall. (U. S.) 367, approved in Endlich on Interpretation of Statutes, § 365. See, also, §§ 72, 295, 339.

We are not certain that these sections would not justify the conclusion that the legislature intended to place the contract made thereby beyond its interference through eminent domain, and to substitute in its stead an equally effective right provided for by the contract, on similar, though not identical, terms as to compensation, and we need not express an opinion on the validity of such action. We think such an inference much more reasonable than that suggested by counsel for the State. But, whether they should be so construed or not, we find abundant reasons for saying that the alternative contended for does not follow.

1. The plain language of the statute is that, in case of amendment, alteration, or repeal, compensation to the extent of all damages sustained shall be made by the State. That damage for loss of franchises is within this language does not seem to be questioned.

2. The nature of the transaction indicates that both parties intended such compensation, and, if they did, that settles what the statute means; and, while possibly it did not cut off the State's already existing power, it did not give it a contract right to accomplish the divestiture of property for a reduced compensation, in the face of the agreement to pay *all damages* contained in the statute.

3. If the claim that the legislature cannot divest the State of its right to exercise its power of eminent domain has the support of the authorities, and if any legislation whereby private property or franchises are divested, upon provision being made for compensation, must be assumed to be done in furtherance of the public welfare, and therefore done under the power of eminent domain, still the contract rights reserved in this act may have been considered valuable rights, and therefore consistent with an intent to pay the damage agreed upon. We think that they were so considered, and the terms upon which they were to be exercised are plainly stipulated.

4. It is significant that during the long period that has elapsed since that contract was made, and in the agitation that the subject has undergone, and throughout the discussions, legislative and otherwise, that have accompanied attempts to have the State avail itself of the reserved contract rights, it seems never to have occurred to any one, or at least to have been suggested by any one, that this legislation was not what it appeared on its face, but was, on the contrary, merely a covert method of securing a right to obtain the property for less than it was really worth, and less than would have to be paid for it if taken under the right of eminent domain—an unnecessary piece of strategy until the Constitution of 1850 put it out of the power of the legislature (if it previously had such power —see 3 Current Law, p. 1190) to arbitrarily and conclusively determine the necessity for taking under the power of eminent domain, unless assent to the provision was necessary as an inducement to the company to accept the law. We are of the opinion that the legislature at least supposed that it was reserving some valid and tangible right, and that it honestly meant to attach valid conditions to its exercise. Having satisfied ourselves that the intended meaning of the words "all damages" was all damages, and not a part of the damage only, the construction to be given is obvious.

We understand that the contention is not made that, in

the absence of any express reservation, the compensation required for the condemning and taking away all of the rights of a corporation is the value of the tangible property, divested of the right to use or to sell the property as a unit to some one who may use it. Should we be mistaken in our understanding, we should then feel constrained to say that such is not the law. The cases cited by counsel for the State appear to support the contrary rule. In the case of *Detroit Citizens' St. Ry. Co.* v. *Common Council of Detroit*, 125 Mich. 673, the subject of the value of franchises was discussed at length. It has a bearing on this case, so far, at least, as to sustain the suggestion that exceptional privileges may be valuable, and may go far to enhance the value of tangible property.

This discussion naturally leads up to the question of the measure of damages. Of that we need only say that we do not discuss it, for the reason that it is unnecessary to a determination of the question before us; neither has the discussion covered all of its possible features.

. As to the other points raised upon the sufficiency of the declaration, we think the case of *State* v. *Wayne Circuit Judges* (Mich.), 104 N. W. 637 (official report withheld pending rehearing), should be considered decisive of them, if, indeed, the making of the application then reviewed should not be held to amount to a waiver of them, if not conclusive upon the question of the sufficiency of the declaration—questions which we neither consider nor determine, as counsel have not discussed them.

We conclude that the order of the learned circuit judge was right, and it is therefore affirmed.

CARPENTER and MONTGOMERY, JJ., concurred with HOOKER, J.

CARPENTER, J. While I concur in the conclusion of Justice HOOKER, my views of the case compel me to prepare a separate opinion. In 1900 the legislature of this State repealed the law incorporating plaintiff. It took this action in pursuance of authority reserved in said law,

and authorized plaintiff to bring suit to recover the damages thereby sustained.   Plaintiff subsequently instituted this suit to recover those damages.

The question presented on this record is this :  Is plaintiff entitled to recover for the loss of the franchise granted. to it by the State in its original act of incorporation ? The circuit court, on an issue raised by defendant's demurrer to plaintiff's declaration, held that it is.   Is that decision correct ?   This depends upon the proper construction of section 39, Act No. 42 of the Laws of 1846 (the act incorporating plaintiff and giving it perpetual existence, except as therein otherwise provided).   Section 39 reads as follows:

"The State reserves the right at any time after thirty years from the passage of this act by a vote of two-thirds of each branch of the legislature to alter, amend, or repeal the same :  *Provided,* That said company shall be compensated by the State for all damages sustained by reason of such alteration, amendment or repeal."

Plaintiff contends that the foregoing language, properly construed, obligates defendant to compensate plaintiff for its franchise lost by the repeal of its charter.   Defendant denies this.   The argument of defendant's counsel in support of their denial, briefly stated, is this:  (*a*) That the legislature intended by section 39 to obtain greater rights after the expiration of the said 30 years than it had theretofore possessed; (*b*) that it had theretofore possessed the right, by exercising the power of eminent domain, to destroy defendant's franchise upon making proper compensation; and (*c*) it therefore follows that the legislature, by section 39, intended to reserve authority to destroy plaintiff's franchise without making proper compensation.   Is this argument (which was presented with great force, ability, and ingenuity by the eminent counsel representing defendant) sound ?

According to section 39, the State may repeal plaintiff's charter after the lapse of 30 years, provided plaintiff " shall be compensated for all damages sustained by reason

of such * * * repeal." To deny plaintiff the right of compensation for a franchise extinguished by the repeal is to assert that the legislature, in declaring that plaintiff should have all damages, intended that it should have less than all damages sustained by the repeal.

It is, then, not unfair to state defendant's argument as follows: The necessity of giving effect to the manifest intent of the legislature that its right should be greater after 30 years than theretofore compels us to declare that, in saying that plaintiff should have "all damages," the legislature intended that it should have less than all damages sustained by the repeal of its charter. While, perhaps, this argument might properly be answered by saying that the words "all damages" can, under no rule of construction, be declared to mean less than all damages, I think the better answer is this, viz.: Full effect may be given the intent of the legislature that its rights should be greater after 30 years than theretofore, without declaring that, in using the words "all damages," it meant to exclude damages for the destruction of a franchise.

The only ground for saying that the rights of the legislature, if the State must pay for a franchise destroyed by the repeal of plaintiff's charter, were not greater after the lapse of 30 years than theretofore, is that it might at any time, upon making proper compensation, have taken the franchise of plaintiff by exercising the power of eminent domain. The legislature, under the Constitution in force in 1846, had the right to determine the necessity for taking property by eminent domain (Cooley on Constitutional Limitations [7th Ed.], p. 759), and there is authority for saying that it might, by the exercise of that right, upon providing for proper compensation therefor, have taken the franchise of a corporation. See *West River Bridge Co.* v. *Dix*, 6 How. (U. S.) 528. See, also, *Armington* v. *Barnet*, 15 Vt. 745; *West River Bridge Co.* v. *Dix*, 16 Vt. 446; *Piscataqua Bridge* v. *New Hampshire Bridge*, 7 N. H. 35.

As bearing upon the *intent of the legislature*, its pos-

session of this power of eminent domain is utterly unimportant; for it had agreed with defendant in unequivocal terms not to exercise it. That agreement is found in these words, quoted from the thirty-sixth section of the act incorporating plaintiff:

"And the rights and franchises vested or which may vest in said company under or by virtue of this act, shall not in any manner be prejudiced or affected, save as herein provided, or by judicial proceedings, or by a repurchase of said railroad, to be made by the State in manner aforesaid."

It is obvious that an attempt by the legislature to take plaintiff's franchise under the power of eminent domain, itself determining the necessity therefor, would be a clear violation of the foregoing agreement. There is thus manifested in plaintiff's charter the intent of the legislature —and whether the agreement manifesting that intent is valid or otherwise is utterly unimportant in determining the question of legislative intent under consideration— that it will not, either during the first 30 years of plaintiff's corporate existence or afterwards, by exercising the power of eminent domain, destroy plaintiff's franchise. When it enacted section 39, the legislature intended to divest *itself* of the right to take plaintiff's franchise by the exercise of the power of eminent domain; and therefore, when it agreed to make full compensation for a franchise lost by the repeal of plaintiff's charter, the legislature did intend to acquire a right which otherwise it did not have. There is, then, no basis for the argument of defendant that the obligation to pay for said franchise denied effect to the manifest intent of the legislature that its right should be greater after 30 years than theretofore. That argument must, in its last analysis, rest upon the obviously impossible proposition that the legislature intended to exercise a right which it solemnly agreed it would not exercise. I conclude, therefore, that the construction of section 39, in accordance with its obvious signification,

which obligates defendant to make full compensation for a franchise lost by the repeal of plaintiff's charter, is not opposed to the intent of the legislature to thereby acquire a new right.

Defendant's counsel also contend that the provision for compensation "must be strictly construed." They say:

"The office of a proviso is to carve exceptions out of a purview. If the State must pay for simply taking away what it had given, then, as already shown, the proviso does not limit, but it destroys, the purview. The only way to give effect to the purview, and to the proviso as well, is to hold that, if the State takes what it had given, plaintiff's damages are limited to such losses as result from the destruction of rights acquired in the lawful exercise of, or in virtue of, the franchises that had been given."

The answer to this contention is, in my judgment, correctly stated in plaintiff's brief. It is as follows:

"The provision relative to compensation is not a proviso in any such refined sense as claimed by the defendant, but is more in the nature of a condition, expressed in terms so clear as to preclude the application of technical rules of construction."

See *Voorhees* v. *Bank of U. S.*, 10 Pet. (U. S.) 449; *Georgia Railroad & Banking Co.* v. *Smith*, 128 U. S. 181.

The order overruling defendant's demurrer is therefore affirmed, and the record will be remanded for further proceedings.

McALVAY, C. J., and GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred with CARPENTER, J. BLAIR, J., did not sit.