DOLAN v CONTINENTAL AIRLINES

Docket No. 149512. Submitted April 12, 1994, at Detroit. Decided January 17, 1995, at 9:15 A.M. Leave to appeal sought.

Sue Ann Dolan brought an action in the Wayne Circuit Court against Continental Airlines, alleging violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.; MSA 17.428(1) et seq., breach of contract, and a public policy tort claim as a result of the termination of the plaintiff's employment with the defendant after she, without the employer's permission, allegedly contacted the United States Drug Enforcement Administration with information regarding suspected drug traffickers and terrorists after her supervisor posted a notice requiring all employees first to receive permission to make such contacts. The court, William J. Giovan, J., granted the defendant's motions to dismiss the claims. The plaintiff appealed.

The Court of Appeals held:

The circuit court's grant of the defendant's motions to dismiss the plaintiff's claims is affirmed.

TAYLOR, J., in an opinion with which R. D. GOTHAM, J., concurred in the result only, stated:

1. In order for the WPA to apply, the violation or suspected violation must be committed in the course of doing business. The WPA does not apply to this case because the failure to report or to be allowed to report suspected drug traffickers or terrorists is not itself a violation of the law and the defendant's refusal to allow employees to report to the DEA independently the information that the plaintiff sought to report did not constitute criminally irresponsible behavior on the part of the defendant.

2. The plaintiff's public policy tort claim is not preempted by the WPA. However, the plaintiff did not state a valid public policy tort claim.

3. The trial court properly dismissed the breach of contract claim. The plaintiff was an at-will employee with no legitimate expectation of termination only for just cause.

SHEPHERD, P.J., did not participate.

*Cunningham & Associates* (by *Douglas C. Cunningham*), for the plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Leonard D. Givens* and *Megan P. Norris*), for the defendant.

Before: SHEPHERD, P.J., and TAYLOR and R. D. GOTHAM,* JJ.

TAYLOR, J. Plaintiff appeals as of right a circuit court order granting defendant's renewed motion to dismiss plaintiff's first amended complaint. We affirm.

Plaintiff worked for defendant as an agent in its Capitol City Airport hub. In early 1991, defendant informed plaintiff and her coemployees to be aware of persons purchasing tickets who fit certain "profiles" related to drug trafficking or terrorist activities. At the time, there were increased concerns about security measures because of the Persian Gulf Crisis. Relying on these profiles, on two separate occasions plaintiff reported persons to airport security, resulting in the arrest of these individuals. The United States Drug Enforcement Administration (DEA) advised plaintiff that because of her tips she would receive a monetary reward. Because of concerns about overzealous reporting and the unnecessary embarrassment of customers, plaintiff's supervisor, Gordy Sullivan, posted a notice directing defendant's employees not to call the DEA without first clearing it with him. After the notice was posted, a dispute developed regarding whether plaintiff directly contacted the DEA. She asserted that she did not, or, if she did, it was about the reward money and not in violation of Sullivan's notice. Plaintiff's employment with defendant was then terminated.

Plaintiff filed her original complaint asserting

---

* Circuit judge, sitting on the Court of Appeals by assignment.

violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, and breach of contract. The circuit court granted defendant's motion to dismiss the WPA claim, but granted plaintiff leave to amend her complaint in order to add a public policy tort claim. After plaintiff filed her amended complaint, defendant filed a renewed motion to dismiss both the breach of contract claim and the public policy tort claim. At that time, plaintiff also filed a motion requesting relief from the court's earlier order dismissing her WPA claim. The court consolidated these matters, granted defendant's motion to dismiss the breach of contract and public policy tort claims, and denied plaintiff's motion for relief from the court's original order that dismissed her WPA claim.

Plaintiff argues that the trial court erred in dismissing her WPA claim because she has stated a prima facie case under the WPA. To state a prima facie claim under the WPA, a plaintiff must establish

> (1) that plaintiff was engaged in protected activities as defined by the act, (2) that plaintiff was subsequently discharged, and (3) that a causal connection existed between the protected activity and the discharge. [*Tyrna v Adamo, Inc,* 159 Mich App 592, 601; 407 NW2d 47 (1987).]

Plaintiff asserts that, even after defendant's notice, any telephone call to the DEA to report profile information on customers constituted protected activity.

The fundamental question raised in this case is whether the WPA was intended to protect employees who report customers meeting a profile of terrorists or drug traffickers. That is, third parties

whose violations, if any, have no connection to the business. In *Dudewicz v Norris Schmid, Inc,* 443 Mich 68; 503 NW2d 645 (1993), the Supreme Court held that the WPA was intended to protect employees who report violations of law arising out of company business regardless of whether the criminal actor is an employer or employee. However, the Court noted that its holding did not begin to "test the outer limits of this rather broad statute." *Id.* at 77. The case before us does test the outer limits of WPA coverage.

In *Dudewicz,* the plaintiff filed assault and battery charges against a fellow employee. The employer told the plaintiff to drop the charges and the plaintiff's employment was terminated when he refused. In concluding that the WPA afforded the plaintiff protection, the Supreme Court explained that the Legislature intended the act to protect "employees who report violations of law by either their employers or fellow employees." *Id.* at 75. With regard to whether the WPA extends coverage to employees who report violations by third parties, the Court suggestively stated that "a strictly literal interpretation of the statute without an analysis of legislative intent arguably could lead to an interpretation that would bar discharge of an employee for reporting a crime by anyone under any circumstances." *Id.* at 77. Yet, because it was possible to do so, the Supreme Court resolved *Dudewicz* without addressing the outer limits of the WPA's reach.

In her dissent in *Dudewicz,* Justice BOYLE indicated that she agreed with the majority that the purpose of the act is "both to encourage employees to assist in law enforcement and to protect those employees who engage in whistleblowing activities." *Id.* at 83 (BOYLE, J., dissenting). However, she continued by indicating that

this observation [of the majority] fails to take account of a significant focus of the statute noted in the bill analyses. A whistleblowing employee alerts the public to the employer's, or a co-worker's, "corruption or criminally irresponsible behavior in the conduct of government or large business." [*Id.*]

She summarized, saying:

In other words, where the conduct of business itself violates a law, statute, or regulation, an employee's report of that illegal conduct is protected activity. [*Id.*]

In Justice BOYLE's view, when the employer in *Dudewicz* fired the plaintiff because he refused to drop the assault and battery charge against a coemployee, the plaintiff was not reporting illegal conduct on the part of the business, and thus, he should have had no WPA protection. I believe that the majority, had it gone that far in its analysis, would have agreed with Justice BOYLE's elaboration of the WPA's focus if not her ultimate conclusion. My position is supported by the *Dudewicz* majority's conclusion that states: "The WPA applies to an employee who reports a violation of a law arising out of a dispute over the handling of company business and occurring during business hours." *Id.* at 80. Had the *Dudewicz* majority utilized Justice BOYLE's approach, I believe it would have found that the defendant, by discharging the plaintiff for reporting criminal activity, was placing the business in the posture of being an accessory after the fact to the assaultive behavior of the assaulting employee. In doing so, the business was acting in a criminally irresponsible manner. Thus, in order for the WPA to apply, the violation or suspected violation must be committed in the course of doing business.

In this case, plaintiff claims that she was discharged for reporting third parties who met a profile that would have placed those individuals in a pool of potential criminal actors. Plaintiff does not assert that her failure to make such a report, or to be allowed to make one, is itself a violation of law. Accordingly, defendant's refusal to allow employees to report independently profile information did not constitute criminally irresponsible behavior on the part of the business, and thus, the WPA does not apply.

Plaintiff also argues that the trial court erred in dismissing her public policy tort claim. A WPA claim and a public policy tort claim are mutually exclusive. *Shuttleworth v Riverside Osteopathic Hosp,* 191 Mich App 25; 477 NW2d 453 (1991). As the Court said in *Dudewicz, supra* at 80:

> A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. As a result, because the WPA provides relief to Dudewicz for reporting his fellow employee's illegal activity, his public policy claim is not sustainable.

Given that the WPA affords no protection under the circumstances, plaintiff's public policy tort claim is not preempted by the WPA. It does not necessarily follow, however, that plaintiff has a viable public policy tort claim.

Plaintiff argues that defendant terminated her employment because it believed she telephoned the DEA regarding persons meeting profiles of suspected drug traffickers and terrorists. Taking this factual allegation as true, *Michigan Ins Repair Co, Inc v Manufacturers Nat'l Bank of Detroit,* 194 Mich App 668, 673; 487 NW2d 517 (1992), plaintiff has failed to state a valid public policy tort claim.

The Supreme Court, in *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 695; 316 NW2d 710 (1982), has recognized three situations in which the grounds for discharge are so contrary to public policy as to be actionable even when the employment is at will. First, when the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty. Second, when the employee is discharged for the failure or refusal to violate the law in the course of employment. Third, when the employee is discharged for exercising a right conferred by a well-established legislative enactment. *Id.* at 695-696.

None of the above situations applies to the present case. Plaintiff does not cite any legislation explicitly prohibiting the termination of employees for reporting suspicious passengers to the DEA. Plaintiff does not allege that she was discharged for failing or refusing to violate the law. Finally, plaintiff does not allege that she was discharged for exercising a statutorily conferred right. Therefore, plaintiff has no valid public policy tort claim.

Finally, the trial court properly dismissed plaintiff's breach of contract claim. Plaintiff argues that she was protected as a "just cause" employee because of statements in defendant's human resources manual. The manual contained a progressive discipline system, but it also vested defendant with the unilateral option of an immediate termination. Accordingly, the manual could not create a legitimate expectation of termination only for just cause. *Rood v General Dynamics Corp,* 444 Mich 107, 140-142; 507 NW2d 591 (1993). This policy manual did not purport to be anything other than a disciplinary guideline and therefore the employer was able to treat plaintiff as an at-will

employee and terminate her employment accordingly.

Affirmed.

R. D. GOTHAM, J., concurred in the result only.

SHEPHERD, P.J., did not participate.