TERZANO v WAYNE COUNTY

Docket No. 171831. Submitted March 12, 1996, at Detroit. Decided May 10, 1996, at 9:15 A.M.

Michael A. Terzano brought an action in the Wayne Circuit Court against Wayne County and Daniel Kerber, the operations director of Detroit Metropolitan Airport, alleging that the defendants, in violation of the Whistleblowers' Protection Act, MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*, terminated the plaintiff's employment as airport electrical inspector after the plaintiff alerted the electrical inspector of the City of Romulus to improper wiring at an airport tenant's premises and work by an unlicensed electrician for the same tenant. The court, Sharon Tevis Finch, J., after a jury trial, entered judgment on a verdict in favor of the plaintiff. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. An employee who reports a violation of law or suspected violation of law by a third party, i.e., someone other than the employer or a fellow employee, is protected by the Whistleblowers' Protection Act when, as in this case, the employee acts within the scope of employment and the reported violation or suspected violation affects the business of the employer.

2. The plaintiff, through his testimony and that of a former supervisor, established a causal link between the plaintiff's whistleblowing and his discharge.

3. The trial court did not abuse its discretion in refusing to admit evidence that the plaintiff had been convicted of a misdemeanor twenty-six years before trial. The defendant sought to introduce this evidence to establish that the plaintiff was fired for failing to disclose the conviction. However, the evidence is irrelevant and the defendants conceded that they learned of the conviction while the plaintiff was still their employee, but that they chose to take no action with regard to the matter.

Affirmed.

1. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — RETALIATORY DISCHARGE — PRIMA FACIE CASE — APPEAL.

In order to establish a prima facie case of retaliatory discharge under the Whistleblowers' Protection Act, a plaintiff must establish that

the plaintiff was engaged in a protected activity as defined by the act, that the plaintiff was subsequently discharged, and that a causal connection existed between the protected activity and the discharge; the determination whether the evidence establishes a prima facie case as a matter of law is reviewed de novo on appeal (MCL 15.362; MSA 17.428[2]).

2. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — THIRD PARTIES.

An employee who reports a violation of law or suspected violation of law by a third party is protected by the Whistleblowers' Protection Act when the employee acts within the scope of employment and the reported violation or suspected violation affects the business of the employer (MCL 15.362; MSA 17.428[2]).

*Steven Fellows*, for the plaintiff.

*Jennifer Granholm*, Corporation Counsel, and *Ellen E. Mason*, Assistant Corporation Counsel, for the defendants.

Before: MURPHY, P.J., and GRIFFIN and E. R. POST,* JJ.

GRIFFIN, J. In this whistleblower's case, defendants appeal by leave granted a judgment in plaintiff's favor entered following a jury trial. On appeal, defendants raise an issue regarding the breadth of § 2 of the Whistleblowers' Protection Act (WPA), MCL 15.362; MSA 17.428(2). We affirm and hold, inter alia, that an employee who reports third-party violations of law or suspected violations of law is protected by the WPA when the employee acts within the scope of employment and the reported violation or suspected violation affects the business of the employer.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

I

Plaintiff is a licensed electrician who was hired on April 9, 1990, by defendant Wayne County to work as a maintenance electrician at the Detroit Metropolitan Airport in Romulus, Michigan. At the outset, plaintiff's job was primarily that of an electrician. However, shortly after plaintiff began working at the airport, his supervisor, Jerald Wisusik, assigned electrical inspection duties to plaintiff. Plaintiff testified that it was explained to him that the airport needed an electrical inspector because some of the tenants of the airport were doing substandard electrical work that was going uninspected.

In May 1990, Wisusik instructed plaintiff to order the stoppage of some construction work that was being performed without a license at a restaurant operating at the airport. While in the restaurant, plaintiff noticed that a high-wattage neon menu board was improperly wired. Plaintiff informed Wisusik that the improperly wired menu board was a potential fire hazard. When plaintiff and Wisusik returned to inspect the menu board, the electrical inspector for the City of Romulus, Joseph Watt, was at the restaurant. Plaintiff showed Watt the improper wiring. Watt ordered the restaurant to unplug the menu board.

Watt and plaintiff walked across the aisle to a hotel, where they observed a workman performing electrical work in a newly constructed bar. After learning that the worker did not have an electrician's license, Watt ordered the bar closed and all construction to temporarily cease. Both the restaurant and the bar were owned by the Host Company. Aside from the airlines, the Host Company was the largest tenant of the Detroit Metropolitan Airport.

Two days later, plaintiff and Wisusik were called into the office of the airport's operations director, defendant Daniel Kerber. During the meeting, defendant Kerber harshly reprimanded plaintiff for reporting the electrical violations to the City of Romulus inspector. According to plaintiff, Kerber said, "I don't want any small town electrical inspector harassing any of my tenants. They can do as they please in their own space." Kerber then ordered plaintiff to have no further contact with city inspectors. Approximately four months later, defendants terminated plaintiff's employment. Plaintiff's discharge occurred just two weeks before the end of his six-month probationary term.

Plaintiff brought this action, claiming that his discharge violated the WPA because his termination was causally related to his reporting of "violations and suspected violations" to the City of Romulus electrical inspector. At trial, plaintiff testified that county officials told him that his reporting of the violations to the Romulus inspector was a reason for his firing. Defendants, however, claimed that plaintiff's discharge was unrelated to the reporting. Defendants argued that plaintiff was terminated for failing to timely repair an electrical problem that affected air traffic and for being rude to an employee of Northwest Airlines. The jury found that plaintiff was discharged in violation of the WPA and awarded damages.

II

On appeal, defendants argue that the trial court abused its discretion in denying their motion for judgment notwithstanding the verdict (JNOV) because plaintiff allegedly failed to show either the first or

third element of a prima facie violation of the WPA. We disagree. In reviewing the trial court's denial of JNOV, we examine the testimony and all legitimate inferences that may be drawn therefrom in the light most favorable to the nonmoving party. *Matras v Amoco Oil Co*, 424 Mich 675, 681-682; 385 NW2d 586 (1986); *Howard v Canteen Corp*, 192 Mich App 427, 431; 481 NW2d 718 (1992). In *Tyrna v Adamo, Inc*, 159 Mich App 592, 601; 407 NW2d 47 (1987), this Court held that in order to establish a prima facie case under the WPA the plaintiff must establish

> (1) that plaintiff was engaged in protected activities as defined by the act, (2) that plaintiff was subsequently discharged, and (3) that a causal connection existed between the protected activity and the discharge.

See also *Chandler v Dowell Schlumberger, Inc*, 214 Mich App 111, 114; 542 NW2d 310 (1995); *Hopkins v City of Midland*, 158 Mich App 361, 378; 404 NW2d 744 (1987). The determination whether the evidence established a prima facie case under the WPA is a question of law to be determined de novo. *Dudewicz v Norris Schmid, Inc*, 192 Mich App 247, 254; 480 NW2d 612 (1991), aff'd in part and rev'd in part on different grounds 443 Mich 68; 503 NW2d 645 (1993).

The dispositive issue presented is whether the WPA protects employees who, while acting in the scope of employment, report third-party violations or suspected violations of law that directly affect their employer's business. See, e.g., *Dudewicz*, 443 Mich 74; *People v Weiss*, 191 Mich App 553, 559; 479 NW2d 30 (1991). In addressing this question, we are mindful that "[t]he fundamental purpose of any rule of statutory construction, of course, is to assist the court in

discovering and giving effect to the intent of the Legislature." *In re Certified Question*, 433 Mich 710, 722; 449 NW2d 660 (1989). Further, "[i]t is thus equally axiomatic that 'the intention of the Legislature, when discovered, must prevail, any existing rule of construction to the contrary.' " *Id.*, quoting *Michigan Central R Co v Michigan*, 148 Mich 151, 156; 111 NW 735 (1907). Finally, where reasonable minds can differ with regard to the meaning of a statute, the court should look to the objective of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purpose of the Legislature. *Weiss, supra* at 559.

Defendants contend that the WPA protects only those employees who report violations committed by either their employer or fellow employees. However, no such limitation exists in either the text of the WPA or its legislative history. Section 2 of the WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2).]

As our Supreme Court observed in *Dudewicz, supra* at 74-75:

> A plain reading of this provision reveals that protection is not limited to employee reports of violations by employers. On its face, the provision only seems to apply to the discharge of an employee who "reports . . . a violation or a suspected violation of a law . . . ."

Accord *Dudewicz*, 192 Mich App 255; *Tyrna*, *supra* at 599; *Hopkins*, *supra* at 377. The legislative analysis of the house bill that became the WPA is consistent with the Supreme Court's reading of the broadly worded statute. Although the legislative analysis emphasizes acts of misconduct committed by government or large businesses, the analysis found no express intention to limit the protection of the WPA to circumstances where the reported violation of law was committed by a particular entity. House Legislative Analysis, HB 5088, 5089 (February 5, 1981). Instead, the analysis envisions protection for employees who do their "civic duty" and "volunteer their assistance to law enforcement authorities." *Id.* Accordingly, when the text of the WPA is analyzed in conjunction with its legislative analysis, there is no express support for defendants' proposed limitation on the scope of the statute.

Nevertheless, defendants argue that our Supreme Court in *Dudewicz*, *supra*, limited the scope of the WPA to those situations where the reported violation pertains to the conduct of either an employer or fellow employees. We disagree. In *Dudewicz*, the Supreme Court held that the WPA protected an employee who reported a criminal assault by a fellow employee that occurred during working hours and arose out of a dispute over the proper handling of company business. *Dudewicz*, *supra* at 70. In reaching this conclusion, the Supreme Court addressed the

defendant's contention that the WPA only protects employees who report violations committed by their employers. In rejecting this argument and holding the WPA to be applicable, the Supreme Court emphasized that

> nothing in either the WPA itself or its legislative analysis limits protection only to those employees who report violations of law by their employer. On the contrary, the explicit language of the analysis and the broad scope of the statute strongly suggest that the WPA was intended to protect employees who report violations by either employers or fellow employees. [*Id.* at 76-77.]

Contrary to defendants' argument, the *Dudewicz* Court expressly reserved comment on the issue whether the WPA extended to other situations where the reported violation was unrelated to the employer or to the employee's employment. Indeed, the Supreme Court stated that the facts presented in *Dudewicz* did not test the "outer limits of this rather broad statute." *Id.* at 77.

We also reject defendants' contention that *Dudewicz* implicitly approved statements in *Dickson v Oakland Univ*, 171 Mich App 68; 429 NW2d 640 (1988), that arguably suggest that the scope of the WPA is limited to circumstances where an employee reports violations of law by the employer. To the contrary, our Supreme Court in *Dudewicz* was clear to state that the WPA contained no such limitation and that the language in *Dickson* had been "unfortunate," incorrect, and "dicta." *Dudewicz*, 443 Mich 76-77, n 4. Furthermore, defendants' reliance on *Dolan v Continental Airlines*, 208 Mich App 316; 526 NW2d 922 (1995), is misplaced. The opinion in *Dolan* does not resolve the present issue. Further, the opinion was

signed by only one judge. Accordingly, the *Dolan* opinion lacks precedential significance. Supreme Court Administrative Order No. 1994-4; *People v Young*, 212 Mich App 630, 637; 538 NW2d 456 (1995).

Although the Supreme Court has yet to establish an outer boundary for the WPA, it has found it helpful to analyze the legislative intent of the enactment because "a strictly literal interpretation of the statute without an analysis of legislative intent arguably could lead to an interpretation that would bar discharge of an employee for reporting a crime by anyone under any circumstances." *Dudewicz*, 443 Mich 77. Further, the Court in *Dudewicz* noted that "remedial statutes, such as the WPA, are to be liberally construed in favor of the persons *intended to be benefited*." *Id.* at 77 (emphasis added). Thus, because our Supreme Court has implied that the Legislature may not have intended the WPA to be construed as broadly as the statutory language suggests, we proceed to determine whether extending the protection of the WPA to the present case is consistent with the objectives of the WPA.

The first judicial articulation of the legislative intent of the WPA was made by this Court in *Hopkins*, *supra* at 374. Later, in *Chilingirian v City of Fraser*, 194 Mich App 65, 68; 486 NW2d 347 (1992), remanded on different grounds 442 Mich 874 (1993), this Court summarized the Legislature's intent as follows:

> The WPA seeks to protect the integrity of the law by removing barriers to employee efforts to report violations of the law. *Hopkins* [*supra* at 374]. Inherent in the WPA is a purpose to protect the public by protecting employees who report violations of laws and regulations. *Id.; Chilingirian*

*v City of Fraser,* 182 Mich App 163, 165; 451 NW2d 541 (1989).

See also *Tyrna, supra* at 599-600. In *Dudewicz,* 443 Mich 75, the Supreme Court reviewed the legislative analysis of the WPA and drew the following, more restrictive conclusions about the Legislature's objective in enacting the WPA:

> The analysis recognizes the problem the WPA was designed to alleviate as the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses. House Legislative Analysis, HB 5088, 5089 (February 5, 1981). The analysis goes on to say that "[t]he people best placed to observe and report violations are the employees of government and business, but employees are naturally reluctant to inform on an employer or a colleague." *Id.* It appears that, at the time the bill was considered, the Legislature intended the protection to apply to employee reports of any and all violations of law by either employers or fellow employees. [Emphasis omitted.]

The Supreme Court also noted that although the WPA provides no such express limitation, "traditional notions of whistleblowing" involve the violation of laws "closely connected with the employment setting." *Id.* at 75.

III

In the present case, plaintiff was acting within the scope of his employment when he reported violations of law committed by a major tenant of his employer. Further, as evidenced by Kerber's alleged statement that he did not want small town inspectors harassing his tenants, the reporting of the violations had an effect on the business of defendants. Plaintiff falls within the class of persons the WPA was intended to

protect. Further, the harm is the type that the WPA was designed to remedy. Under these circumstances, we conclude that plaintiff's complaint states a cause of action under the WPA.

We are convinced that an employee may be just as fearful of telling authorities about violations of law committed by an entity that has a direct financial effect on the business of his employer as the employee would be to report a violation of law committed by his employer. Under either circumstance, the employer may suffer financial harm or embarrassment and, hence, the employee may be reluctant to report the violation for fear of employer retaliation. To this extent, the legislative objective of encouraging employees to report illegal activities would be thwarted if the WPA were not applied. In addition, the employee who reports such third-party conduct may be in the best or only position to observe such wrongful conduct. The rationale for applying the WPA in such circumstances is as strong as in the situations where the employer itself is the perpetrator of the reported violation. The objectives of the WPA are furthered by affording plaintiff protection.

Under the facts of the present case, the application of the WPA to plaintiff's conduct is consistent with the language of the statute, its legislative history, and the objectives that the Legislature sought to achieve. Accordingly, we affirm the trial court's denial of defendants' motion for JNOV and hold that plaintiff is protected by the WPA. Consistent with the case-by-case approach of *Dudewicz*, we express no opinion regarding whether our holding is the outer limit of the WPA with respect to coverage for the reporting of third-party violations.

IV

Defendants further contend that plaintiff failed to establish a causal link between plaintiff's whistleblowing and his discharge. Defendants' argument in this regard is premised upon the fact that over four months elapsed between the alleged whistleblowing incident and plaintiff's discharge. However, plaintiff testified that defendants told him that his reporting of the electrical violations to the city inspector was part of the reason he was terminated. Plaintiff's testimony in this regard was corroborated by plaintiff's immediate supervisor, who testified that he heard an airport official tell plaintiff that the whistleblowing incident constituted one of the reasons that plaintiff was discharged. When this evidence is viewed in a light most favorable to plaintiff, *Matras*, *supra* at 681-682; *Howard*, *supra* at 431, a rational trier of fact could find a causal connection between the whistleblowing and plaintiff's discharge.

V

Finally, defendants assert that the trial court abused its discretion in refusing to admit evidence that plaintiff had been convicted of a misdemeanor twenty-six years before trial. Defendants argue that the evidence was admissible to show that plaintiff's failure to list the conviction on his job application constituted an independent reason to discharge plaintiff. However, defendants have abandoned this issue by failing to provide authority in support of this proposition. *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 14; 527 NW2d 13 (1994).

In addition, even if the issue had been properly presented, we find no abuse of discretion in the trial

court's ruling that such evidence was irrelevant. MRE 401, 403. Indeed, defendants admitted that they learned of plaintiff's conviction while plaintiff was still employed at the airport and that they issued a letter to plaintiff stating that his employment at Wayne County could continue and that no further action was warranted on the matter.

Affirmed.