*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLEVELAND STEGALL,

Plaintiff-Appellant,

v

RESOURCE TECHNOLOGY CORPORATION, doing business as BRIGHTWING, and FCA US, LLC,

Defendants-Appellees.

UNPUBLISHED
September 24, 2019

No. 341197
Oakland Circuit Court
LC No. 2016-155043-CD

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

In this unlawful-discharge case, plaintiff, Cleveland Stegall, appeals by right the trial court's order granting summary disposition in favor of defendants Resource Technology Corporation, doing business as Brightwing, and FCA US, LLC under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

In 2013, FCA employed information technology (IT) support persons at its Sterling Heights Assembly Plant (SHAP) on both first and second shift. FCA employed some IT support persons directly; others were hired through staffing agencies as contract workers. Plaintiff began working at SHAP through Brightwing, a staffing agency. In April 2016, plaintiff complained to his superiors about what he perceived to be an issue with asbestos insulation in one of his work areas in the plant. Plaintiff e-mailed photographs of the suspected problem area to his supervisor, and plaintiff's supervisor sent the photographs to the plant's health and safety manager. The safety manager consulted with an outside expert who determined that there was no asbestos issue.

Around May 2016, FCA formally announced that it was ending production of the Chrysler 200 sedan, and that the second shift at SHAP would be eliminated. In light of this announcement, on June 3, 2016, Rick Spondike, plaintiff's superior, sent an e-mail to human

resources personnel at FCA indicating that on June 17, 2016, he planned to transfer two of plaintiff's coworkers to another FCA plant and that plaintiff would be released.

Following plaintiff's termination, Kerri Kacanowski, a manager at Brightwing, instructed plaintiff to update his résumé and informed plaintiff that Brightwing would search for a new employment opportunity for him. Then, on July 6, 2016, plaintiff filed a discrimination complaint with the Michigan Occupational Safety and Health Administration (MiOSHA), naming defendants in the complaint. Subsequently, Brightwing sent plaintiff an "Offboarding Survey" on two separate occasions and Brightwing's 401(k) provider, Principal Bank, sent plaintiff a letter indicating that his "former employer" had closed his 401(k) account.

Plaintiff then commenced this lawsuit, alleging that FCA and Brightwing were his joint employers and that both employers violated the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. Plaintiff alleged that he was terminated because he was "about to report Defendants' violations of the law." Plaintiff, however, later withdrew his WPA claim against FCA. Plaintiff also alleged that both alleged employers violated public policy by discharging him. Ultimately, the trial court granted summary disposition under MCR 2.116(C)(10) in favor of both defendants and dismissing plaintiff's complaint in its entirety. This appeal followed.

## II. ANALYSIS

"We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, 325 Mich App 289, 293-294; ___ NW2d ___ (2018). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

## A. PUBLIC POLICY

Plaintiff argues that the trial court erred in granting summary disposition with respect to his public-policy claims. We disagree.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). "There is, however, an exception to the at-will employment doctrine based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. (internal citation and quotation marks omitted). Michigan courts have recognized that a discharge is contrary to public policy when the discharge is premised (1) on the employee's exercise of a right guaranteed by law, (2) on the employee's exercise of a duty required by law, or (3) on the employee's refusal to violate the law. *Id*. at 526. Although this list is not exhaustive, "our courts have yet to find a situation meriting extension beyond [these] three circumstances." *Id*.

In Michigan, claims of unlawful discrimination follow the burden-shifting framework set forth in *McDonnel Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). See *Debano-Griffin v Lake County*, 493 Mich 167, 176; 828 NW2d 634 (2013). To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) that he engaged in a protected

activity, (2) that this was known by defendant, (3) that defendant took an employment action adverse to plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Landin*, 305 Mich App at 533. Once a plaintiff establishes a *prima facie* case, a rebuttable presumption of retaliation arises. *Debano-Griffin*, 493 Mich at 176. The employer must then offer a legitimate, non-retaliatory reason for the discharge. *Id*. A plaintiff's claim should be presented for fact finding if there is a material question whether the employer's proffered reason was a pretext for unlawful retaliation. *Id*.

Plaintiff's public-policy claims alleged that defendants—his purported joint employers—wrongfully terminated him because of his failure or refusal to violate the law in the course of his employment at SHAP. Plaintiff essentially argues that his complaint about potential problems with asbestos at the plant and his demand for safety equipment amounted to a "refusal to violate a law" while he was at SHAP and that FCA and Brightwing terminated him as a result. Plaintiff's argument is without merit. First, there is no Michigan caselaw extending the public policy exception to discharges in retaliation for internal reporting of alleged violations of the law and plaintiff fails to cite any legal authority which would support such an extension. Second, there was no genuine issue of material fact to support that either FCA or Brightwing wrongfully terminated plaintiff in retaliation for his refusal to violate the law because there is no evidence that anyone actually violated any law or regulation.

Plaintiff contends that federal laws and regulations required FCA to ensure that its employees were not exposed to certain concentrations of asbestos, to provide protective equipment to employees exposed to airborne asbestos, and to notify employees of results of tests conducted under certain federal regulations. Plaintiff alleges that he refused to "acquiesce" in FCA's alleged violations of these various laws. Nothing in the record, however, supports plaintiff's contention that FCA exposed him to airborne asbestos or that the situation required FCA to conduct airborne testing or provide plaintiff with protective equipment. Instead, the record showed that plaintiff's supervisor forwarded plaintiff's concerns regarding asbestos to the plant's health and safety manager. In turn, the safety manager visually inspected the area and sent photographs to an asbestos specialist who assured him that there was no asbestos hazard. Moreover, MiOSHA investigated plaintiff's complaint and determined that there were no violations at SHAP.

In short, apart from his own unfounded suspicions, plaintiff fails to cite any evidence to support his contention that FCA violated the law during the term of his employment at SHAP. Accordingly, there is no evidence that plaintiff was wrongfully terminated for refusing to acquiesce in FCA's violations of law. Thus, the trial court properly granted summary disposition to defendants on plaintiff's public-policy claims.[1]

---

[1] Given our resolution of this issue, we need not address plaintiff's argument that the trial court erred in holding that his public policy claims were preempted by the WPA.

## B. WPA CLAIM

Next, plaintiff argues that the trial court erred by dismissing his WPA claim against Brightwing. Again, we disagree.

In this case, after FCA terminated plaintiff, in July 2016, plaintiff filed a wrongful termination complaint with MiOSHA. Brightwing was named in the complaint. In August 2016, Shannon Borkowski from Brightwing's "Engagement Team" sent plaintiff an e-mail with a "Contractor Offboarding Survey" attached. The subject of the e-mail stated: "How was your Time with Brightwing?" In the e-mail, Borkowski stated:

> We'd like to take this opportunity to thank you for your time with Brightwing. We hope that your experience with us has been excellent on every level and we'd love your feedback. Please take a moment to take our brief survey. Thank you in advance for your time and helping to make us better.
>
> We wish you the best in all your future endeavors.

Brightwing's 401(k) provider then sent plaintiff a letter indicating that his "former employer" had closed his retirement plan, which was followed by another email containing a "Contractor Offboarding Survey."

Kacanowski testified that Brightwing sends "Offboarding Surveys" to employees whenever an assignment ends but that this did not indicate that Brightwing was not looking to place plaintiff with an assignment. Kacanowski stated that she was aware that plaintiff filed a complaint with MiOSHA and that she contacted Latham to obtain information regarding the complaint. According to Kacanowski, Brightwing continued to search for jobs for plaintiff in companies other than FCA. Brightwing, however, did not resubmit plaintiff's name to FCA because it was not aware that plaintiff remained eligible to work for FCA.

"Protected activity under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *McNeil-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16-17; 891 NW2d 528 (2016) (internal citation and quotation marks omitted). Under the WPA, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. See *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251-252; 848 NW2d 121 (2014); *Phinney v Perlmutter*, 222 Mich App 513, 563; 564 NW2d 532 (1997). To establish a prima face case under the WPA, a plaintiff must prove the following elements:

> (1) The employee was engaged in one of the protected activities listed in the provision.
>
> (2) [T]he employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.

> (3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. [*Wurtz*, 495 Mich at 251-252.]

"To establish a prima facie case, a plaintiff can rely on either direct evidence of retaliation or indirect evidence." *McNeil-Marks* 316 Mich App at 17. "The determination whether the evidence established a prima facie case under the WPA is a question of law to be determined de novo." *Terzano v Wayne Co*, 216 Mich App 522, 526; 549 NW2d 606 (1996) (internal citation and quotation marks omitted).

Regarding the first element, Brightwing does not dispute that plaintiff engaged in protected activity, i.e., filing a wrongful termination complaint with MiOSHA. As to the second element, for purposes of the WPA, termination of an employment relationship amounts to an "adverse action." See *Wurtz*, 495 Mich at 251-252. Although Brightwing argues that it did not terminate its relationship with plaintiff, we believe that a reasonable jury could find, based on the letters sent to plaintiff, that Brightwing did, in fact, terminate its relationship with plaintiff. Nonetheless, we conclude that the trial court did not err in granting summary disposition to Brightwing because plaintiff failed to establish the third element of his prima facie case.

As noted earlier, the final element of a prima facie WPA claim required plaintiff to show a causal connection between his protected activity and the adverse employment action. *Wurtz*, 495 Mich at 251-252. "[A] temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *West v Gen Motors Corp*, 469 Mich 186; 665 NW2d 468 (2003). Rather, "plaintiff had to show that his employer took adverse employment action *because of* plaintiff's protected activity," i.e., plaintiff "had to demonstrate that the adverse employment action was in some manner influenced by the protected activity." *Id*. at 185.

Here, plaintiff has shown nothing more than temporal proximity between his protected activity and his alleged discharge. Plaintiff has presented no evidence that Brightwing opposed plaintiff's wrongful-termination complaint or otherwise considered it when allegedly deciding to discharge plaintiff. Plaintiff did not show that Brightwing found employment opportunities for him and then decided not to offer those opportunities to plaintiff because he engaged in protected activity. Indeed, following his termination at FCA, although Kacanowski advised plaintiff to update his résumé, there was no guarantee that Brightwing would successfully locate work for plaintiff. Moreover, Kacanowski testified that Brightwing continued to search for opportunities for plaintiff and that she did not resubmit plaintiff's name to FCA because she was not aware that he was eligible for future placement. This record does not create an issue of fact regarding a causal connection. Therefore, the trial court properly granted summary disposition to Brightwing on plaintiff's WPA claim.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter