PHINNEY v PERLMUTTER

PHINNEY v ADELMAN

PHINNEY v UNIVERSITY OF MICHIGAN BOARD OF REGENTS

Docket Nos. 175485, 175857, 176940. Submitted June 18, 1996, at Detroit. Decided April 4, 1997, at 9:00 A.M.

Carolyn Phinney, formerly employed as a senior research associate at the Institute of Gerontology at the University of Michigan, brought an action in the Washtenaw Circuit Court against institute research scientist Marion Perlmutter, institute director Richard Adelman, and investigator Lois Verbrugge and an action in the Court of Claims against the University of Michigan Board of Regents. Phinney alleged that Perlmutter, among other things, committed fraud and misrepresentation in appropriating Phinney's research and making false representations about the prospects of obtaining foundation grants for continued research and about Phinney's continued employment at the institute. Phinney alleged that Adelman, Verbrugge, and the board of regents, among other things, violated the Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.; MSA 17.428(1) et seq., in taking retaliatory actions against Phinney after she complained about misconduct by Perlmutter. Judge Patrick J. Conlin, sitting as the circuit court and the Court of Claims in the respective actions, granted summary disposition for Verbrugge and found no cause of action against the board of regents. A jury returned verdicts against Perlmutter and Adelman. The circuit court entered a judgment on the verdicts, awarded prejudgment interest against Perlmutter from the date of Phinney's fourth amended complaint and against Adelman from the date of Phinney's first amended complaint, and denied Phinney's request for an award of attorney fees against Adelman under the WPA. Perlmutter, Adelman, and Phinney appealed and Phinney and the board of regents cross appealed. The appeals were consolidated.

The Court of Appeals held:

1. Perlmutter's claim that the circuit court lacked subject-matter jurisdiction in view of federal copyright law is without merit. Phinney's claim against Perlmutter was for fraud, a state-law claim over which federal courts have no jurisdiction. Phinney's claim is not

preempted by the Copyright Act in the absence of evidence that Phinney's writings were registered with the Register of Copyrights.

2. The circuit court did not abuse its discretion in granting Phinney leave to file a fourth amended complaint against Perlmutter in the absence of a showing by Perlmutter of resulting prejudice.

3. The circuit court did not err in denying Perlmutter's motion for summary disposition based on the statute of frauds. Assuming, for the purposes of argument, that Phinney's fraud claim against Perlmutter is inextricably intertwined with a contract of employment, an agreement for an indefinite term of employment, such as that which Phinney had, is generally regarded as not being within the proscription of the statute of frauds.

4. The circuit court did not err in denying Perlmutter's motion for a directed verdict based on governmental immunity. A question of fact existed regarding whether Perlmutter's actions were so reckless as to demonstrate a substantial lack of concern for whether injury resulted.

5. The circuit court did not abuse its discretion in denying Perlmutter's motions for a directed verdict, judgment notwithstanding the verdict, and a new trial, which were all based on a claim of insufficient evidence of fraud or misrepresentation. A rational trier of fact can conclude from the evidence presented that Perlmutter made material misrepresentations, that they were false, that Perlmutter knew they were false or made them recklessly without knowledge of their truth or falsity, that Perlmutter made the misrepresentations with the intent that Phinney would act on them, that Phinney acted in reliance on Perlmutter's misrepresentations, and that Phinney suffered damages.

6. The circuit court did not abuse its discretion with respect to any of the evidentiary rulings challenged by Perlmutter on appeal.

7. The circuit court did not err in refusing to instruct the jury, as requested by Perlmutter, that "[d]amages for emotional distress, humiliation, injury to reputation or exemplary damages are not available in a fraud claim," but did err in limiting the available damages to those based on contract principles. Damages for mental and emotional distress may be awarded where, as here, there is allegation and proof of tortious conduct independent of a breach of contract. The circuit court's error in limiting damages does not require reversal. The circuit court did not err in refusing to instruct the jury, as requested by Perlmutter, that reliance by Phinney on the alleged misrepresentations by Perlmutter had to be reasonable. Fraud requires proof of actual, but not reasonable, reliance on the alleged misrepresentation. Appellate review of Perlmutter's claim that the circuit court erred in instructing the jury about burden of

proof is precluded in light of Perlmutter's failure to object at trial to the instruction that was given.

8. Perlmutter waived the issue concerning the lack of a distinction between past and future damages inasmuch as she stipulated the use of a general verdict form.

9. The damages assessed against Perlmutter are not excessive because they are not higher than the highest amount the evidence can support. The circuit court did not abuse its discretion in denying Perlmutter's motion for a new trial on the grounds of jury misconduct and improper closing argument by Phinney's counsel. The alleged jury misconduct concerned the jury's conduct after trial and therefore did not affect the trial or the evidence presented at trial. The circuit court was in the best position to determine whether the jury's verdict was motivated by such impermissible considerations as passion, bias, or anger.

10. The circuit court did not abuse its discretion in denying Perlmutter's motion for a new trial on the ground of newly discovered evidence. Evidence of an interview of Phinney is ambiguous, and the fact that Phinney avoided further injury upon discovering Perlmutter's scheme does not undo the damage that was inflicted.

11. The circuit court did not abuse its discretion in denying Perlmutter's motion for a new trial on the asserted ground of jury prejudice in the absence of an affirmative showing by Perlmutter of prejudice.

12. Phinney is entitled to prejudgment interest from Perlmutter from the date of the original complaint against Perlmutter, not the date of the fourth amended complaint by which Phinney first alleged the claim of fraud and misrepresentation and on which the judgment was issued. Prejudgment interest is paid from the date of the original complaint because the purpose of prejudgment interest is to compensate the prevailing party for expenses incurred in bringing an action for money damages and for any delay in receiving such damages. Prejudgment interest for future damages may be assessed where, as here, the action does not result from personal bodily injury. The case must be remanded for recalculation of prejudgment interest against Perlmutter.

13. The circuit court had proper jurisdiction over the WPA claims against Adelman. The WPA defines "employers" to include state entities and specifies that actions thereunder may be filed in the circuit court. The Legislature, in enacting the WPA, waived the right of state entities to be sued only in the Court of Claims.

14. Adelman's claim on appeal that Phinney was not entitled to a jury trial with regard to the WPA claims is without merit. State entities against whom claims under the WPA are brought may be sub-

jected to jury trials. In any event, Adelman consented to the jury trial.

15. The circuit court did not abuse its discretion in granting Phinney leave to file a fourth amended complaint against Adelman in the absence of a showing of bad faith on Phinney's part or prejudice to Adelman and in view of the imposition of $10,000 in costs against Phinney. Amendment was not futile because the claims against Adelman were not barred by the applicable statute of limitations.

16. For purposes of reviewing Adelman's claim on appeal that Phinney's action against him is barred by the ninety-day statute of limitations of the WPA, the filing date is October 1, 1990, the date of Phinney's original complaint, not April 1, 1991, the date of the first amended complaint by which Phinney first named Adelman as a defendant. Adelman's counsel at trial had referred to October 1, 1990, as the filing date, and Adelman is thus barred from now taking the contrary position that the later date was the filing date. A civil action under the WPA must be brought within ninety days after the occurrence of the alleged violation of the WPA, MCL 15.363(1); MSA 17.428(3)(1). While two instances of alleged violations of the WPA by Adelman are within this limitation period, several others occurred before the ninety-day period. Phinney's action against Adelman for alleged violations that occurred more than ninety days before she filed her action is timely under the continuing violations doctrine, which applies where there was a policy of discrimination, or, as in this case, a continuing course of conduct, i.e., a series of discriminatory acts that were sufficiently related so as to constitute a pattern, only one of which occurred within the limitation period. The circuit court did not err in denying Adelman's motion for summary disposition based on the statute of limitations in light of the existence of a genuine issue of material fact concerning whether Adelman had engaged in continuing violations of the WPA.

17. Phinney's claims against Adelman under the WPA are not barred by governmental immunity, and the circuit court did not err in denying Adelman's motions for summary disposition, a directed verdict, and judgment notwithstanding the verdict, all of which were based on governmental immunity. The act explicitly includes the state in its definition of "employer" and includes an agent of an employer within its definition of "employer." The governmental immunity statute must be read in pari materia with the WPA, the extension of the remedies under the WPA is consistent with the protections that the governmental immunity act offers to governmental employees against third parties, and the WPA not only contains no language freeing the government from its requirements, regulations,

and restraints, but it explicitly includes the state among those employers who are subject to the act. The WPA, being more special and particular than the governmental immunity statute, was intended to be an exception to the governmental immunity statute, because the Legislature must be presumed not to have intended a conflict.

18. The WPA, insofar as it abrogates governmental immunity, does not, as Adelman claims on appeal, violate the Title-Object Clause of the Michigan Constitution. The purpose of the WPA is to protect employees who suffer retaliation for reporting violations of law. The inclusion of the state among employers subject to WPA is incidental to the purpose of the WPA and need not have been stated in the title of the WPA.

19. The circuit court did not abuse its discretion in denying Adelman's motions for summary disposition, a directed verdict, and judgment notwithstanding the verdict, all of which were based on the asserted grounds that Phinney failed to prove that she had engaged in protected activity under the WPA, failed to establish any nexus between her activity and the nonrenewal of her appointment, or failed to demonstrate pretext. Viewing the evidence in the light most favorable to Phinney, the record discloses that she reported violations of law by Perlmutter to the university, a public body, that there was a sufficient nexus between Phinney's reporting of such violations and the retaliatory actions taken by Adelman against her, and that her failure to publish academic writings was a pretext for the retaliatory actions taken against her.

20. Phinney's claims against Adelman are within the scope of the WPA.

21. Adelman, by failing to object at trial, failed to preserve as an issue on appeal his claim that the circuit court failed to properly instruct the jury about quantum of proof. Manifest injustice will not result from the Court of Appeals' decision not to review this issue.

22. The fact that the circuit court jury ruled against Adelman while the Court of Claims ruled in favor of the board of regents with regard to similar claims under the WPA does not mean that the trial judge improperly deferred to the jury. A trial court sitting as the Court of Claims is not obligated to return a verdict consistent with the jury's verdict in a circuit court action joined with the Court of Claims action.

23. The circuit court did not abuse its discretion in several evidentiary rulings challenged by Adelman on appeal.

24. The circuit court did not err in denying Adelman's motions for remittitur or a new trial. The damages assessed against Adelman were not higher than the highest amount the evidence can

support, and the jury's verdict was not motivated by impermissible considerations. Adelman waived the issue concerning a lack of distinction between past and future damages by not objecting to the verdict form used. Contrary to Adelman's assertion, damages for emotional distress may be awarded in an action under the WPA.

25. Attorney fees in an action under the WPA may be awarded by the trial court at its discretion. In this case, the circuit court did not abuse its discretion in refusing Phinney's request for attorney fees after considering the contingent fee arrangement between Phinney and her counsel.

26. Prejudgment interest assessed against Adelman must be from the date of the first amended complaint, when Adelman was first named as a defendant, not from the date of the fourth amended complaint, when the claims under the WPA were first made against Adelman. Prejudgment interest on future damages may be awarded where, as here, the action does not result from personal bodily injury. The case must be remanded for recalculation of the amount of prejudgment interest Adelman must pay.

27. The circuit court did not err in granting summary disposition for Verbrugge on the basis of the expiration of the period of limitation applicable to the action against her. Phinney failed to establish any fraudulent concealment, MCL 600.5855; MSA 27A.5855, by Verbrugge that would have tolled the running of the period of limitation.

28. The Court of Claims did not clearly err in finding that Phinney had failed to establish that the board of regents had violated the WPA. The record supports the Court of Claims' findings that the board had legitimate, nondiscriminatory reasons for actions taken against Phinney and that Phinney had not shown that those reasons were a pretext. Phinney waived the issue of a wrong burden of proof being employed by the Court of Claims when she failed to raise it in the statement of questions presented.

Affirmed; circuit court case remanded for recalculation of prejudgment interest.

1. FRAUD — RELIANCE ON MISREPRESENTATION.

   Fraud requires proof of actual, but not reasonable, reliance on an alleged misrepresentation.

2. INTEREST — PREJUDGMENT INTEREST — AMENDED COMPLAINTS.

   The purpose of prejudgment interest is to compensate the prevailing party for expenses incurred in bringing an action for money damages and for any delay in receiving such damages; prejudgment interest against a defendant who loses with regard to a cause of action raised in an amended complaint should be assessed from

the date of the original complaint; prejudgment interest against a defendant who is added in an amended complaint and who loses with regard to a cause of action first raised in a later amended complaint should be assessed from the date of the amended complaint by which the defendant was added (MCL 600.6013[1]; MSA 27A.6013[1]).

3. INTEREST — PREJUDGMENT INTEREST — FUTURE DAMAGES.

Prejudgment interest may be awarded for future damages where the action does not result from personal bodily injury (MCL 600.6013[1], 600.6301; MSA 27A.6013[1], 27A.6301).

4. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — STATUTE OF LIMITATIONS — CONTINUING VIOLATIONS.

A civil action under the Whistleblowers' Protection Act must be brought within ninety days after the occurrence of the alleged violation of the act; violations that occur more than ninety days before the bringing of the action are actionable under the continuing violation doctrine where there is a policy of discrimination or a continuing course of conduct, i.e., a series of discriminatory acts that are sufficiently related so as to constitute a pattern, only one of which occurs within the limitation period (MCL 15.363[1]; MSA 17.428[3][1]).

5. GOVERNMENTAL IMMUNITY — WHISTLEBLOWERS' PROTECTION ACT.

A civil action under the Whistleblowers' Protection Act against a governmental entity or agent in their capacity as employer is not barred by governmental immunity (MCL 15.361[b], 691.1401 *et seq.*; MSA 17.428[1][b], 3.996[101] *et seq.*).

6 CONSTITUTIONAL LAW — TITLE-OBJECT CLAUSE — WHISTLEBLOWERS' PROTECTION ACT — GOVERNMENTAL IMMUNITY.

The Whistleblowers' Protection Act, insofar as it abrogates governmental immunity, does not violate the Title-Object Clause of the Michigan Constitution (Const 1963, art 4, § 24; MCL 15.361[b]; MSA 17.428[1][b]).

7. MASTER AND SERVANT — WHISTLEBLOWERS' PROTECTION ACT — EMOTIONAL DISTRESS DAMAGES.

Damages for emotional distress are awardable in a civil action under the Whistleblowers' Protection Act (MCL 15.363[1], [3]; MSA 17.428[3][1],[3]).

*Green & Green* (by *Philip Green*) (*Sommers, Schwartz, Silver & Schwartz, P.C.* by *Patrick Burkett,* of Counsel), for Carlyon Phinney.

*Bodman, Longley & Dahling, LLP* (by *Jerold Lax*), for Marion Perlmutter.

*Butzel Long* (by *Diane M. Soubly* and *James S. Rosenfeld*), for Lois Verbrugge, Richard Adelman, and University of Michigan Board of Regents.

Before: WAHLS, P.J., and MURPHY and C. D. CORWIN*, JJ.

WAHLS, P.J. Defendant Marion Perlmutter hired plaintiff, Carolyn Phinney, as a senior research associate at the Institute of Gerontology (IOG) at the University of Michigan. At the time, Perlmutter was a research scientist at the IOG, and defendant Richard Adelman was the director of the institute. Plaintiff accused Perlmutter of stealing her research. Adelman appointed defendant Lois Verbrugge to conduct an investigation. The investigators found that Perlmutter was not guilty of scientific misconduct. Perlmutter was also found not guilty in two other investigations concerning allegations that she committed plagiarism. In the meantime, plaintiff lost her job at the IOG.

Plaintiff sued, alleging that Perlmutter had defrauded her of her research and that Adelman and defendant University of Michigan Board of Regents retaliated against her for reporting Perlmutter's misconduct. The jury agreed with plaintiff and awarded her $133,000 in damages against Perlmutter for fraud and $989,200 against Adelman for retaliatory discrimination. The trial court, sitting as the Court of Claims, found no cause of action against the board of regents with regard to plaintiff's claim under the Whistle-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

blowers' Protection Act (WPA), MCL 15.361 *et seq.*; MSA 17.428(1) *et seq.*

In Docket No. 175485, which involved the fraud claim, Perlmutter appeals and plaintiff cross appeals the judgment against Perlmutter. We affirm in part and remand for a recalculation of the amount of prejudgment interest to which plaintiff is entitled.

In Docket No. 175857, the retaliation claim against Adelman, Adelman appeals and plaintiff cross appeals the judgment against Adelman. We affirm in part and remand for a recalculation of the amount of prejudgment interest to which plaintiff is entitled.

In Docket No. 176940, the claim against the board of regents, plaintiff appeals and the board of regents cross appeals the trial court's order finding no cause of action against the board of regents. We affirm.

DOCKET NO. 175485

I

Perlmutter argues that the trial court lacked subject-matter jurisdiction because plaintiff's claim involves rights arising under federal copyright law. We disagree.

Whether a court has subject-matter jurisdiction is a question of law. *Universal Am-Can Ltd v Attorney General*, 197 Mich App 34, 37; 494 NW2d 787 (1992). The burden is on the plaintiff to establish jurisdiction. *Id.* Although the jurisdictional issue here was never resolved by the trial court, a challenge to subject-matter jurisdiction may be raised at any time, even for the first time on appeal. *Lehman v Lehman*, 312 Mich 102, 105; 19 NW2d 502 (1945); *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm*, 192 Mich App 19, 24; 480 NW2d 585 (1991).

In general, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action. *Franchise Tax Bd v Laborers Vacation Trust*, 463 US 1, 10; 103 S Ct 2841; 77 L Ed 2d 420 (1983). Here, plaintiff's complaint alleges a state-law claim of fraud. See *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976); *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 208; 544 NW2d 727 (1996). Accordingly, a federal court does not have subject-matter jurisdiction over this claim. *Franchise Tax Bd, supra*.

In addition, plaintiff's claim was not preempted by the Copyright Act. Before an action for infringement may be made under the federal Copyright Act, a publication must be registered. 17 USC 411(a); *Marshall & Swift v BS & A Software*, 871 F Supp 952, 957 (WD Mich, 1994). This is a jurisdictional requirement. *Id.*, p 958; *Carter v Helmsley-Spear, Inc*, 861 F Supp 303, 331 (SD NY, 1994), modified on other grounds 71 F3d 77 (CA 2, 1995). Here, plaintiff never claimed that any of the works written by her, whether alone or as a joint author, were duly registered with the Register of Copyrights. In addition, defendants have provided no evidence of such registration. Thus, assuming arguendo that plaintiff's complaint can be construed to allege a violation under the Copyright Act, a federal court would not have had jurisdiction to hear such a claim. *Marshall & Swift, supra,* p 958; *Carter, supra,* p 331. Accordingly, the trial court had jurisdiction to hear plaintiff's claim.

II

Perlmutter argues that the trial court abused its discretion by permitting plaintiff to file a fourth

amended complaint. We disagree. Amendment is generally a matter of right rather than grace. *Patillo v Equitable Life Assurance Society of the United States*, 199 Mich App 450, 456; 502 NW2d 696 (1992). A trial court should freely grant leave to amend if justice so requires. MCR 2.118(A)(2). Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. *Horn v Dep't of Corrections*, 216 Mich App 58, 65; 548 NW2d 660 (1996). This Court reviews a grant or denial of a motion for leave to amend pleadings for abuse of discretion. *Id.* Here, Perlmutter has identified no prejudice that occurred because of the trial court's decision other than the generalized assertion that justice was not done. The trial court did not abuse its discretion in granting plaintiff leave to amend her complaint. *Patillo, supra*, p 456.

III

Perlmutter argues that plaintiff's claim was barred by the statute of frauds. We disagree. Assuming arguendo that plaintiff's claim is inextricably bound to her contract claim, an agreement for an indefinite term of employment is generally regarded as not being within the proscription of the statute of frauds. *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 612, n 24; 292 NW2d 880 (1980). Employers are not protected against jury resolution of a claim of an oral agreement for an indefinite term. *Id.* Because plaintiff testified that Perlmutter offered her a position that could turn into a "long term research career" if they

were successful in bringing in grant money, the trial court did not err in denying defendant's motion for summary disposition. *Id.*

IV

Perlmutter argues that the trial court erred in denying her motion for a directed verdict based on governmental immunity. We disagree. Viewing the evidence in the light most favorable to plaintiff, *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995), Perlmutter made job promises to plaintiff with knowledge of their falsity and with the intent that plaintiff would act on those promises. Because a question of fact existed regarding whether Perlmutter's actions were so reckless as to demonstrate a substantial lack of concern for whether an injury resulted, the trial court did not err in denying Perlmutter's motion for a directed verdict based on governmental immunity. MCL 691.1407(2); MSA 3.996(107)(2); *Johnson v Wayne Co*, 213 Mich App 143, 159; 540 NW2d 66 (1995).

V

Perlmutter argues that the verdict against her was against the great weight of the evidence. We disagree. Perlmutter preserved this issue by moving for a directed verdict, a judgment notwithstanding the verdict (JNOV), and a new trial on this basis.

The standard of review for JNOV requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Orzel v Scott Drug Co*, 449 Mich 550, 557; 537 NW2d 208 (1995); *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995). Only if the evidence, so viewed, fails

to establish a claim as a matter of law, should a motion for JNOV be granted. *Orzel, supra,* p 558. Similarly, in deciding a motion for a directed verdict, the trial court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party. *Mahrle v Danke,* 216 Mich App 343, 350; 549 NW2d 56 (1996). This Court reviews all the evidence presented up to the time of the motion to determine whether a question of fact existed. *Hatfield, supra,* p 325. This Court will not disturb the trial court's decision absent a clear abuse of discretion. *Id.* Finally, with respect to a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party. *Severn, supra,* p 412. This Court's function is to determine whether the trial court abused its discretion in making such a finding. *Id.* This Court gives substantial deference to the trial court's conclusion that a verdict was not against the great weight of the evidence. *Id.*

In order to prove fraud or misrepresentation, plaintiff had to show: (1) that Perlmutter made a material misrepresentation, (2) that it was false, (3) that Perlmutter knew it was false or made the promise recklessly without knowledge of its truth or falsity, (4) that Perlmutter made the promise with the intent that plaintiff would act on it, (5) that plaintiff acted in reliance, and (6) that plaintiff suffered damage. *Arim v General Motors Corp,* 206 Mich App 178, 195; 520 NW2d 695 (1994). A fraudulent misrepresentation may be based on a promise made in bad faith without intention of performance. *Hi-Way Motor Co, supra,* pp 337-338.

Plaintiff testified that her initial work for Perlmutter focused on preparing a grant application with the Spencer Foundation. Perlmutter repeatedly told plaintiff that plaintiff would have a full-time position if the Spencer Foundation application was granted and that Perlmutter believed that the grant would be funded. Marion Faldet, the vice president and corporate secretary of the Spencer Foundation, testified that the foundation declined the application on July 20, 1988. Plaintiff and her assistant, Lisa Chiodo, testified that Perlmutter continued to promise employment through August and September, even though she must have known that the grant was rejected. During this time, plaintiff wrote out all the research she had done on the topic of "wisdom," including the theoretical rationale and methodology for all the instruments she developed to test subjects on the topic. It was not until November 1988 that Perlmutter told plaintiff that the Spencer Foundation grant application had been rejected. According to Chiodo, in addition to the promise that plaintiff would be employed, Perlmutter promised that plaintiff would have first authorship on any scientific paper if Perlmutter used her research in grant writing.

In addition, testimony at trial showed that plaintiff and Chiodo believed that a grant of $150,000 to $200,000 would be requested for a three-year period. In reality, the application requested more than $2 million over a six-year period. Although Perlmutter argues that it would have been "incredible" for her to deliberately sabotage the grant process by requesting an unfundable amount, the relevant issue at trial was not the reasonableness of the grant proposal, but whether Perlmutter informed plaintiff that she had

substantially increased the amount of the grant request.

Regarding damages,[1] in *Clemens v Lesnek*, 200 Mich App 456, 463-464; 505 NW2d 283 (1993), the Court held that there was insufficient evidence of mental anguish damages to put the issue before the jury. *Id.* In that case, one of the plaintiffs testified that "it[']s been pretty humiliating knowing that there's a stench coming out of the back yard and it's yours." *Id.*, p 463. The plaintiffs in that case argued that their demeanor on the witness stand was sufficient to put the issue of mental anguish before the jury. *Id.* In contrast to *Clemens*, plaintiff here provided abundant direct evidence of her mental injuries. Dr. Kenneth Silk, plaintiff's treating psychiatrist, linked plaintiff's emotional distress to the events underlying the fraud. Other testimony showed that plaintiff's career would be damaged. Accordingly, *Clemens* is distinguishable.

Viewing the evidence in plaintiff's favor, reasonable jurors could find that Perlmutter knowingly made several false representations. Similarly, reasonable jurors could find that Perlmutter made these representations with the intent that plaintiff would rely on them and continue to give Perlmutter access to her research, and that plaintiff did indeed rely on the representations in that manner. Reasonable jurors could find that such ongoing access to plaintiff's research, regardless of whether identical grant applications had been sent simultaneously, made the representations material. Finally, reasonable jurors could find that

---

[1] In issues VII(A), VIII, and IX, Perlmutter makes other arguments regarding damages. In this issue, we analyze only whether there was sufficient evidence such that a jury could reasonably find that plaintiff suffered damages.

plaintiff suffered damages as a result of relying on Perlmutter's misrepresentations. Accordingly, the trial court did not abuse its discretion in denying Perlmutter's motions for a directed verdict and JNOV. Similarly, the trial court did not abuse its discretion in determining that the jury's verdict was not against the great weight of the evidence.

VI

Perlmutter argues that the trial court abused its discretion by admitting inflammatory and misleading evidence. We disagree. The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993).

First, Perlmutter argues that the trial court should not have admitted plaintiff's testimony that Dr. W. Andrew Achenbaum told her that plaintiff was the fourth person to complain to him about Perlmutter. To the extent that Perlmutter is arguing that the trial court should have instructed the jury to consider the evidence against the university only, and not against Perlmutter, she waived that argument by failing to request such an instruction. *In re Forfeiture of $19,250*, 209 Mich App 20, 32; 530 NW2d 759 (1995). This evidence was relevant and admissible against the university because it tended to show pretext.

We do not believe that the trial court abused its discretion in admitting plaintiff's Exhibits 9, 10, and 11 as complete documents. Because plaintiff's Exhibits 119, 120, 121, and 122 tended to show that Perlmutter was not as heavily recruited as her testimony made it appear, the trial court did not abuse its discretion in

determining that they were relevant to Perlmutter's credibility. MRE 401; *People v Bahoda,* 448 Mich 261, 289; 531 NW2d 659 (1995). In addition, the trial court did not abuse its discretion in determining that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403; *Bahoda, supra,* p 289.

Regarding Perlmutter's proposed Exhibit 10, she failed to make an offer of proof to provide this Court with the information it needs to evaluate the claim of error. MRE 103(a)(2); *People v Stacy,* 193 Mich App 19, 31; 484 NW2d 675 (1992). Because the jury found no cause of action with regard to Perlmutter's cross-claim, the issue whether the trial court improperly excluded the questioning of her with respect to her legal expenses is moot. *People v Rutherford,* 208 Mich App 198, 204; 526 NW2d 620 (1994); *Crawford Co v Secretary of State,* 160 Mich App 88, 93; 408 NW2d 112 (1987). Finally, the trial court did not abuse its discretion when it stopped questioning of Chiodo by plaintiff's counsel and indicated that the questioning went beyond the scope of rebuttal. MRE 611(b); *Wischmeyer v Schanz,* 449 Mich 469, 474-475; 536 NW2d 760 (1995).

The trial court did not abuse its discretion with respect to any of the evidentiary issues raised by Perlmutter.

VII

Perlmutter argues that the trial court made several errors in instructing the jury. We agree in part.

A

First, Perlmutter argues that the trial court erred in refusing to give an instruction that damages for emotional distress are not recoverable in a fraud action. We disagree. Perlmutter requested an instruction that "[d]amages for emotional distress, humiliation, injury to reputation or exemplary damages are not available in a fraud claim." In refusing to give the jury this instruction, the trial court noted the general rule that absent tortious conduct independent of a breach, damages for mental distress are not available in a claim for breach of contract. However, the court also noted that when the contract has elements of personality, and when the damage suffered is not compensable by reference to the contract, damages for mental distress may be appropriate. Finally, the court stated that because the promises in this case involved matters of personality, damages for mental distress were awardable.

When a party requests an instruction that is not covered by the standard jury instructions, the trial court may, in its discretion, give additional, concise, understandable, conversational, and nonargumentative instructions, provided they are applicable and accurately state the law. *Chmielewski v Xermac, Inc*, 216 Mich App 707, 713-714; 550 NW2d 797 (1996). If the requested instruction does not accurately state the law, it is properly refused. *Id.*, p 714.

In Michigan, mental distress damages are not recoverable for the breach of a commercial contract unless it can reasonably be said that such damages were contemplated by the parties at the time that the contract was made. *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 419; 295 NW2d 50 (1980).

However, damages for mental and emotional distress may be awarded where there is allegation and proof of tortious conduct independent of the breach of contract. *Phillips v Butterball Farms Co, Inc (After Second Remand)*, 448 Mich 239, 251; 531 NW2d 144 (1995); *Kewin, supra,* pp 420-421.

We are not bound in this case by contractual principles only. First, plaintiff alleged tortious conduct. In *Kewin, supra,* p 423, the plaintiff "alleged and proved no more than the failure of the defendant to discharge its obligations under the disability insurance contract." Similarly, in *Valentine v General American Credit, Inc,* 420 Mich 256, 263; 362 NW2d 628 (1984), the plaintiff "failed to plead the requisite purposeful tortious conduct." Here, in contrast, plaintiff alleged fraud as a distinct cause of action.

Second, *Kewin* requires not only allegation but also proof of tortious conduct. *Phillips, supra,* p 251; *Valentine, supra,* p 263; *Kewin, supra,* pp 420-421. Thus, in *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 611; 374 NW2d 905 (1985), the Court held that the plaintiff was not entitled to mental distress damages where she failed to establish a prima facie claim for intentional infliction of emotional distress. Similarly, in *Clemens, supra,* pp 463-464, this Court held that there was insufficient evidence of mental anguish damages to put the issue before the jury. *Id.* Here, in contrast to *Roberts* and *Clemens,* plaintiff presented sufficient evidence from which a reasonable jury could find the elements of fraud. See issue V.

Finally, the tortious conduct must be independent of the contractual breach. *Phillips, supra,* p 251; *Kewin, supra,* pp 420-421. Here, plaintiff alleged that her authorship and coauthorship of scientific papers,

grant applications, and studies were not within the scope of her employment. At trial, plaintiff testified that, in reliance on Perlmutter's misrepresentations, she worked without pay and shared the resulting creative work and research with Perlmutter.

Because plaintiff alleged and proved tortious conduct independent of any contractual claim, the trial court erred in limiting the available damages to those based on contract principles. *Phillips, supra*, pp 251-252. Despite the trial court's error, reversal is not required. This Court will not reverse where the right result is reached for the wrong reason. *Welch v District Court*, 215 Mich App 253, 256; 545 NW2d 15 (1996).

Generally in tort cases actual damages include compensation for mental distress and anguish. *Phillips, supra*, p 251, n 32; *Veselenak v Smith*, 414 Mich 567, 574; 327 NW2d 261 (1982). In addition, exemplary damages are available to the extent that a remedy for mental injury is not otherwise recognized. *Id.*, pp 573-574. In a fraud and misrepresentation action, the tortfeasor is liable for injuries resulting from his wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated. *Price, supra*, p 472; *Fagerberg v LeBlanc*, 164 Mich App 349, 356-357; 416 NW2d 438 (1987).

In determining whether mental distress damages were awardable, the trial court stated:

> The relationship between Phinney and Perlmutter was not strictly one of business. At the heart of this action was the use of mental impressions, creative works and academic research.

We agree with this assessment and hold that in the context of such a relationship,[2] emotional distress reasonably might have been anticipated as a legal and natural consequence of Perlmutter's actions.

Perlmutter relies on *Pantelas v Montgomery Ward & Co, Inc*, 169 Mich App 273, 276; 425 NW2d 782 (1988), where this Court held that the plaintiff's frustration in not being able to purchase an advertised product was not a cognizable form of loss. However, that case involved a claim under the Michigan pricing and advertising act (PAA), MCL 445.351 *et seq.;* MSA 19.853(11) *et seq.*, and not an allegation of common-law fraud. 169 Mich App 274. Accordingly, any statement in *Pantelas* concerning common-law fraud was dicta and did not constitute binding precedent. *Roberts, supra,* pp 597-598; *People v Green*, 205 Mich App 342, 346; 517 NW2d 782 (1994). In addition, although the action in *Pantelas* implicated principles of fraud, the intent required to prove a violation of the PAA is less demanding than the intent required for common-law fraud. The PAA forbids an advertiser from advertising a sale unless certain requirements are met. MCL 445.355; MSA 19.853(15). The intent involved is only the "knowing" placement of an advertisement. *Id.* In comparison, this case required plaintiff to show that Perlmutter made a material promise to her in bad faith with no intention of performing and with an intent that plaintiff would rely on the promise. *Hi-Way Motor Co, supra,* pp 337-338; *Arim, supra,* p

---

[2] We caution that mental distress damages will not always be awardable in a fraud and misrepresentation action. Rather, the focus is on whether, under the circumstances of the case, damages are the legal and natural consequences of the wrongful act and reasonably might have been anticipated. *Price, supra,* p 472; *Fagerberg, supra,* pp 356-357.

195. This difference in intent distinguishes this case from *Pantelas* and supports an award of consequential damages, including emotional distress damages, in a case of common-law fraud. See *Shaw v Cassar*, 558 F Supp 303, 311 (ED Mich, 1983) ("Actual damages in Michigan, particularly when an intentional wrong is involved, . . . include damages for emotional stress, embarrassment and humiliation"). Finally, to the extent that *Pantelas* holds that mental damages are never awardable in a fraud case, it conflicts with *Clemens*, *supra*, pp 463-464. Under Administrative Order No. 1996-4, this panel must follow *Clemens*.

The trial court erred in limiting damages to those based on contractual principles. *Phillips*, *supra*, pp 251-252; *Kewin*, *supra*, pp 420-421. However, because damages for mental distress were awardable in this case under tort principles, the trial court correctly refused the give the instruction requested by Perlmutter. *Clemens*, *supra*, pp 463-464; *Price*, *supra*, p 472; *Shaw*, *supra*, p 311.

B

Perlmutter argues that the trial court abused its discretion by refusing to instruct the jury that plaintiff *reasonably* must have relied on any representation made by Perlmutter. We disagree. Michigan courts have repeatedly cited the elements for a claim of fraud and misrepresentation as requiring that the "plaintiff acted in reliance upon [a material misrepresentation]." *Kassab v Michigan Basic Property Ins Ass'n*, 441 Mich 433, 442; 491 NW2d 545 (1992); *Hi-Way Motor, Co*, *supra*, p 336; *Christensen v Michigan State Youth Soccer Ass'n, Inc*, 218 Mich App 37, 44;

553 NW2d 638 (1996); *Baker, supra*, p 208; *Arim, supra*, p 195.

Perlmutter relies on *Montgomery Ward & Co v Williams*, 330 Mich 275, 284; 47 NW2d 607 (1951), where the Court stated that "fraud is not perpetrated upon one who has full knowledge to the contrary of a representation." This rule of law was explained in *Sautter v Ney*, 365 Mich 360, 363; 112 NW2d 509 (1961), where the Court stated:

> To defeat an otherwise righteous cause for fraud, by means of the allegation that the plaintiff had timely knowledge of the fact he says was falsely represented, proof of negligence on his part will not suffice. The representation and its materiality proven, it must be shown that the plaintiff's knowledge was so informatively complete as to render the allegation of reliance quite as false as the representation itself.

In other words, someone who knows that a representation is false cannot rely on that representation. Such knowledge prevents not only reasonable reliance, it prevents any reliance at all. Accordingly, *Montgomery Ward* and *Sautter* are consistent with a requirement of actual, and not reasonable, reliance.

Our decision is complicated by the opinion in *Nieves v Bell Industries Corp*, 204 Mich App 459, 464; 517 NW2d 235 (1994), where a panel of this Court wrote:

> Defendant also contends that the trial court erred in refusing to dismiss plaintiff's misrepresentation claim. We agree. A misrepresentation claim requires reasonable reliance on a false representation. See *State-William Partnership v Gale*, 169 Mich App 170; 425 NW2d 756 (1988). There can be no fraud where a person has the means to determine that a representation is not true. *Montgomery Ward & Co v*

*Williams*, 330 Mich 275; 47 NW2d 607 (1951); *Webb v First of Michigan Corp*, 195 Mich App 470, 474; 491 NW2d 851 (1992). Here, plaintiff acknowledged that he read the at-will employment language in the various documents presented to him and that Lerner could not alter the terms of the employment agreement. He chose to believe Lerner rather than the signed contract. However, a plaintiff cannot claim to have been defrauded where he had information available to him that he chose to ignore. *Webb*, *supra*, p 475.

Numerous cases both before and after *Nieves* have required only actual, and not reasonable, reliance. See, e.g., *James v City of Burton*, 221 Mich App 130; 560 NW2d 668 (1997); *Kassab*, *supra*, pp 442-443; *Baker*, *supra*, p 210; *Clement-Rowe v Michigan Health Care Corp*, 212 Mich App 503, 507-508; 538 NW2d 20 (1995); *Brownell v Garber*, 199 Mich App 519, 534; 503 NW2d 81 (1993); *Temborius v Slatkin*, 157 Mich App 587, 597; 403 NW2d 821 (1986). Accordingly, we need not follow *Nieves* under Administrative Order No. 1996-4. *People v Young*, 212 Mich App 630, 639; 538 NW2d 456 (1995), remanded on other grounds 453 Mich 973 (1996).

In any case, as its support for the proposition that a misrepresentation claim requires reasonable reliance, *Nieves* cites *State-William*, *supra*, p 179, which stated:

Defendants' fraud claim also fails because Gale could not reasonably rely on the alleged statements that the Bagel Place would rent the premises when the land contract expressly required plaintiff to deliver that space vacant. *Gale expressly reserved to himself that space, and cannot later claim that he relied on plaintiff to lease it when making his decision to purchase the building.* [Emphasis added.]

A close reading of this language in *State-William* shows that the Court actually made an estoppel-type argument that prevented the counterclaim defendant from being able to show actual reliance. In addition, earlier in *State-William*, the Court had cited the elements of fraudulent misrepresentation as only requiring reliance. *Id.*, p 178. The Court never cited any authority requiring reasonable, as opposed to actual, reliance. We believe that the misstatement in *Nieves* derives from this misreading of *State-William*.

The trial court did not err in refusing to give the instruction requested by Perlmutter.

C

Because Perlmutter never objected on the record to the instruction regarding the burden of proof before the jury retired to deliberate, appellate review of this issue is precluded absent manifest injustice. MCR 2.516(C); *Phillips v Deihm*, 213 Mich App 389, 403; 541 NW2d 566 (1995). This Court has held that manifest injustice does not occur where the trial court instructs the jury that fraud must be proved by a preponderance of the evidence. *Mina v General Star Indemnity Co*, 218 Mich App 678, 685; 555 NW2d 1 (1996).

VIII

Perlmutter argues that the judgment erroneously failed to distinguish between past and future damages. However, she stipulated the use of a general verdict form. Error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 323-324; 553 NW2d 377 (1996);

*Byrne v Schneider's Iron & Metal, Inc,* 190 Mich App 176, 184; 475 NW2d 854 (1991). Accordingly, Perlmutter has waived this issue.

IX

Perlmutter argues that the damages awarded by the jury were excessive. We disagree. There was evidence from plaintiff's treating physician about her emotional distress and prognosis. In addition, other testimony showed that plaintiff's career would be damaged. The amount awarded was not greater than the highest amount the evidence can support. MCR 2.611(E)(1); *Palenkas v Beaumont Hosp,* 432 Mich 527, 531-532; 443 NW2d 354 (1989).

Although the trial court may consider whether a verdict was induced by bias or prejudice, its inquiry must be limited to objective considerations relating to the actual conduct of the trial or to the evidence adduced. *Palenkas, supra,* p 532; *Howard v Canteen Corp,* 192 Mich App 427, 436; 481 NW2d 718 (1992). Here, Perlmutter's argument concerning the behavior of the jury after the trial does not concern the conduct of the trial or the evidence adduced. *Id.,* p 436. Regarding the closing argument by plaintiff's counsel, it is the trial judge who has experienced the drama of the trial and is in the best position to determine whether the jury's verdict was motivated by such impermissible considerations as passion, bias, or anger. *Palenkas, supra,* p 534. After reviewing the record, we do not believe that the trial court abused its discretion in denying defendant's motion for a new trial. *Palenkas, supra,* p 532; *Howard, supra,* p 436.

X

Perlmutter argues that a new trial should have been granted on the basis of newly discovered evidence. We disagree. The excerpt of plaintiff's interview that Perlmutter provided in her appeal is ambiguous. In any case, the fact that plaintiff was able upon discovery of Perlmutter's scheme to prevent further injury did not undo the damage that had already been inflicted. After reviewing the record, we do not believe that the trial court abused its discretion in denying Perlmutter's motion for a new trial. *People v Miller (After Remand)*, 211 Mich App 30, 46-47; 535 NW2d 518 (1995); see 3 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 472.

XI

Perlmutter argues that the trial court erred in failing to determine whether jury misconduct required a new trial. We disagree. Perlmutter did not make an affirmative showing of prejudice. Nor do the facts that Perlmutter presented clearly establish an inference that juror prejudice occurred. The trial court did not abuse its discretion in denying Perlmutter's motion for a new trial. *People v Strand*, 213 Mich App 100, 103-104; 539 NW2d 739 (1995); *Tomei v Bloom Associates, Inc*, 75 Mich App 661, 668; 255 NW2d 727 (1977).

XII

On cross appeal, plaintiff argues that the trial court should have granted interest from the date of the filing of plaintiff's original complaint. We agree.

Plaintiff first filed a complaint against Perlmutter on October 1, 1990. However, that complaint did not

allege fraud and misrepresentation, the theory upon which plaintiff ultimately recovered. Plaintiff did not allege fraud and misrepresentation against Perlmutter until her fourth amended complaint, which was filed on March 11, 1992. The trial court ruled that judgment interest on the amount recovered from Perlmutter should run from the date of the filing of the fourth amended complaint.

This Court reviews de novo the award of prejudgment interest pursuant to MCL 600.6013(1); MSA 27A.6013(1). *Beach v State Farm Mutual Automobile Ins Co*, 216 Mich App 612, 623-624; 550 NW2d 580 (1996). MCL 600.6013(1); MSA 27A.6013(1), states, in part:

> Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section, except that for complaints filed on or after October 1, 1986, interest shall not be allowed on future damages from the date of filing of the complaint to the entry of judgment. As used in this subsection, "future damages" means that term as defined in [MCL 600.6301; MSA 27A.6301].

Imposition of statutory interest under this statute is mandatory. *Hadfield v Oakland Co Drain Comm'r*, 218 Mich App 351, 357; 554 NW2d 43 (1996); *Dep't of Treasury v Central Wayne Co Sanitation Authority*, 186 Mich App 58, 61; 463 NW2d 120 (1990). Prejudgment interest must be paid from the date the complaint is filed. MCL 600.6013(6); MSA 27A.6013(6); *Hadfield, supra,* p 357.

When courts construe statutes, their primary goal is to ascertain and give effect to legislative intent. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996). Here, the purpose of prejudgment interest is

to compensate the prevailing party for expenses incurred in bringing actions for money damages and for any delay in receiving such damages. *Hadfield, supra*, p 356; *Paulitch v Detroit Edison Co*, 208 Mich App 656, 663, n 2; 528 NW2d 200 (1995). A majority of the Michigan Supreme Court concurred with Justice RILEY's opinion that this statutory purpose is not furthered by allowing interest for periods during which no claim existed against the defendant. *Rittenhouse v Erhart*, 424 Mich 166, 218; 380 NW2d 440 (1985) (RILEY, J.). Similarly, a defendant must pay prejudgment interest only from the "date of delay." *Beach, supra*, pp 624-625. A court may disallow prejudgment interest for periods of delay where the delay was not the fault of, or caused by, the debtor. *Eley v Turner*, 193 Mich App 244, 247; 483 NW2d 421 (1992).

Here, the question posed by plaintiff has not been squarely addressed. Neither *Rittenhouse, supra*, nor *Beach, supra*, involved a plaintiff who filed an amended complaint that changed the theory of liability under which the plaintiff eventually recovered from the defendant. It would not seem to further the purpose of prejudgment interest to award it in a situation where the plaintiff's amendment changed the theory of liability. However, the prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the plaintiff. *Hadfield, supra*, p 357. The Supreme Court has held that the relation back of amendments for other purposes is not analogous to the purposes of prejudgment interest. *Rittenhouse, supra*, p 218 (RILEY, J.). Rather, "the complaint" for purposes of this statute is the "formal complaint filed against the defendant upon whom the prejudgment interest is being taxed." *Id.*, p 217 (RILEY,

J.). Accordingly, prejudgment interest was awardable from the date that a complaint was filed against Perlmutter. *Id.* Contrary to Perlmutter's argument, plaintiff is entitled to prejudgment interest for future damages when the action does not result from personal bodily injury. *Paulitch, supra,* pp 662-663. We remand and instruct the trial court to recalculate prejudgment interest from the date that plaintiff filed her original complaint.

DOCKET NO. 175857

### XIII

Defendant Adelman argues that the Court of Claims had exclusive jurisdiction over the claim against him because he is a state official. We disagree. Ordinarily, state actors may be sued only in the Court of Claims. *Anzaldua v Band,* 216 Mich App 561, 584; 550 NW2d 544 (1996). However, the WPA defines "employer" to include state entities and specifies that the actions thereunder may be filed in the circuit court. *Id.* Accordingly, by enacting the WPA, the Legislature waived the right of state entities to be sued only in the Court of Claims. *Id.*; see *Driver v Hanley,* 207 Mich App 13, 17-18; 523 NW2d 815 (1994).

### XIV

Defendant Adelman argues that he is entitled to a new trial because plaintiff was not entitled to a jury trial under the WPA. We disagree. After an extensive discussion, this Court held recently that the WPA subjects state entities to jury trials. *Anzaldua, supra,* p 589. In any case, Adelman waived this challenge by consenting to the jury trial.

XV

Defendant Adelman argues that the trial court abused its discretion by permitting plaintiff's fourth amended complaint. We disagree. In granting plaintiff's motion for leave to amend her complaint, the trial court imposed $10,000 in costs upon plaintiff. Defendant Adelman has not shown bad faith on plaintiff's part or that the amendment caused him prejudice. The argument that the amendment was futile because of a ninety-day statute of limitations is treated in issue XVI. The trial court did not abuse its discretion in granting plaintiff's motion for leave to amend her complaint. *Patillo, supra,* p 456.

XVI

Defendant Adelman argues that plaintiff's claim against him was barred by the statute of limitations. We disagree. In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), this Court accepts the plaintiff's well-pleaded allegations as true and considers all the documentary evidence that the parties disputed. *Bowers v Bowers,* 216 Mich App 491, 495-496; 549 NW2d 592 (1996).

Plaintiff's original complaint of October 1, 1990, did not name Adelman as a defendant. Plaintiff first named Adelman as a defendant in her first amended complaint on April 1, 1991. On appeal, Adelman asserts for the first time that, for purposes of the statute of limitations, the filing date of plaintiff's claim against him should be April 1, 1991. When Adelman's counsel raised a statute of limitations argument before the trial court, he argued that "[t]he suit involving Dr. Adelman was, likewise, not started until October 1 of 1990." In renewing Adelman's motion,

counsel again referred to that date. As a general rule, issues not raised before the trial court are not properly preserved for appellate review. *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995). In addition, a party may not take a position in the trial court and subsequently seek redress in an appellate court on the basis of a position contrary to that taken in the trial court. *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994). Finally, a statute of limitations defense must be raised in a party's first responsive pleading or by motion filed not later than his responsive pleading. *Butler v DAIIE*, 121 Mich App 727, 741; 329 NW2d 781 (1982). Consideration of this issue at this late stage would place a substantial burden on the parties and the court. Accordingly, Adelman has waived this portion of his statute of limitations argument. For purposes of this issue, we will treat plaintiff's filing date against Adelman as October 1, 1990.

Adelman argues in the alternative that if October 1, 1990, is the appropriate date, then the allegations against Adelman were present effects of earlier decisions that do not extend the WPA limitation period. A civil action under the WPA must be brought within ninety days after the "occurrence of the alleged violation of this act." MCL 15.363(1); MSA 17.428(3)(1); *Covell v Spengler*, 141 Mich App 76, 81; 366 NW2d 76 (1985).

It is not disputed that plaintiff was denied housing at the Institute for Gerontology within ninety days of October 1, 1990. Similarly, it is not disputed that plaintiff was denied a position in September 1990. However, other acts alleged by plaintiff clearly pre-

dated the filing of plaintiff's complaint by more than ninety days. For example, plaintiff alleges that Adelman suspended her for insubordination from October 13, 1989, to October 17, 1989, and that Adelman repeatedly attempted to coerce plaintiff into relinquishing her first authorship rights in November 1989. Accordingly, we must determine whether the continuing violations doctrine applies to claims under the WPA, an issue that is one of first impression.

In *Sumner v Goodyear Tire & Rubber Co*, 427 Mich 505, 510; 398 NW2d 368 (1986), the Court adopted the continuing violations doctrine for claims under the Michigan State Fair Employment Practices Act (FEPA), MCL 423.301 *et seq.*; MSA 17.458(1) *et seq.*, repealed by 1976 PA 453; the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*; and the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The continuing violations doctrine evolved as federal courts sought ways in appropriate cases to avoid the strict application of the ninety-day limit of title VII of the 1964 Civil Rights Act. 427 Mich 525. Federal courts refused to automatically dismiss untimely cases for three reasons: first, title VII was a remedial statute "whose purpose [was] to root out discrimination and make injured parties whole"; second, the injured party was often a lay person who was unaware of the need to act quickly, or was an employee who feared reprisal or awaited union action; and third and most importantly, discriminatory acts occurred in manners that made it difficult to say precisely when they occurred. *Id.*, pp 525-526.

The rationale that necessitated development of the doctrine in the federal courts and that led the Michigan Supreme Court to adopt the doctrine for claims

under the FEPA, the Civil Rights Act, and the HCRA supports the application of the doctrine to claims under the WPA. First, like title VII of the 1964 Civil Rights Act, the WPA is a remedial statute that is to be liberally construed in favor of the persons intended to be benefited. *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 77; 503 NW2d 645 (1993); *Terzano v Wayne Co*, 216 Mich App 522, 530; 549 NW2d 606 (1996). Second, the injured party in a WPA case is often an employee who fears reprisal. Finally, like acts of discrimination based on race, gender, or handicap, acts of discrimination based on retaliatory animus may occur in a manner that makes it difficult to state the precise date of their occurrence. Accordingly, we hold that the continuing violations doctrine applies to claims under the WPA. *Sumner, supra,* pp 525-526.

Having determined that the continuing violations doctrine is applicable to claims under the WPA, we must determine whether the doctrine is relevant to this case. In *Sumner*, the Court noted that there were three distinct subtheories under the continuing violations doctrine. *Sumner, supra,* p 528. The "policy of discrimination" subtheory involves "allegations that an employer has engaged in a continuous policy of discrimination." The "continuing course of conduct" subtheory involves a situation "where an employee challenges a series of allegedly discriminatory acts which are sufficiently related so as to constitute a pattern, only one of which occurred within the limitation period." *Id.* Finally, the "present effects of past discrimination" subtheory involved the situation where "a party suffered timely effects or injury from a past untimely act of discrimination." *Id.* This subtheory ceased to be actionable following the United

States Supreme Court's decision in *United Air Lines, Inc v Evans*, 431 US 553; 97 S Ct 1885; 52 L Ed 2d 571 (1977). *Sumner, supra*, p 528.

Here, there was not sufficient evidence to support a claim under a theory of a "policy of discrimination." For example, in *Evans, supra*, a stewardess had been forced to resign under then-existing company rules that required stewardesses, but not male employees, to resign when they got married. Similarly, in *Robson v General Motors Corp*, a companion case to *Sumner, supra*, the issue involved whether General Motors guidelines violated the plaintiff's rights under the HCRA. There was no comparable university policy at issue here. Rather, this case is comparable to *Sumner, supra*, where the plaintiff was allegedly subject to a continuing course of racial harassment that culminated in his dismissal. Thus, the question here is whether there was a genuine issue of material fact concerning whether there was a "continuing course of conduct" that satisfied the requirements of the continuing violations doctrine.

In applying the "continuing course of conduct" sub-theory, the *Sumner* Court considered the following factors:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.* a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without

being dependent on a continuing intent to discriminate? [*Sumner, supra*, p 538, quoting *Berry v LSU Bd of Supervisors*, 715 F2d 971, 981 (CA 5, 1983).]

As in *Sumner*, the facts here fit within this analysis. The alleged acts involved the same subject matter, i.e., retaliation, and occurred with fairly high frequency. *Sumner, supra*, pp 538-539. As with harassment, the nature of a retaliatory act is that it ceases once the intent to retaliate ends. It does not provide notice of subsequent neutrally initiated injuries. *Id.*, p 539. Accordingly, we believe that there was a genuine issue of material fact regarding whether there was a continuing course of conduct that violated the plaintiff's rights under the WPA.

Of course, the mere existence of a continuing violation is insufficient if none of the relevant conduct occurred within the limitation period. *Id.*, pp 539, 543. Indeed, Adelman's central argument is that the acts that occurred within the ninety-day statute of limitations were not independent acts of discrimination, but rather present effects of past discrimination. However, unlike in *Knight v Blue Cross-Blue Shield of Michigan*, a companion case to *Sumner, supra*, p 544, here there was evidence of retaliatory acts within the limitation period. We believe that there was a genuine issue of material fact that the denial of housing at the Institute for Gerontology and the denial of a position in September 1990 were independent acts of discrimination sufficiently connected with the prior acts to constitute a continuing violation. Accordingly, the trial court did not err in denying Adelman's motion for summary disposition.

XVII

Adelman argues that the trial court erred in denying his motions for summary disposition, a directed verdict, and JNOV where plaintiff's claim was barred by the doctrine of governmental immunity. We disagree.

In determining whether a plaintiff's claim is barred by immunity granted by law, MCR 2.116(C)(7), a court must consider all documentary evidence filed or submitted by the parties. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 134; 545 NW2d 642 (1996). The court accepts well-pleaded allegations as true and construes them in a light most favorable to the nonmoving party. *Id.* The standards of review for the denial of a motion for a directed verdict and for the denial of a motion for JNOV were set forth in issue V. See *Hatfield, supra,* p 325; *Severn, supra,* p 412. Under the governmental immunity act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, governmental agencies are immune from tort liability when engaged in the exercise or discharge of a governmental function. *Tryc, supra,* p 134. This statute provides for broad immunity. *Id.*

Here, it is not disputed that Adelman was engaged in the exercise of a governmental function. Accordingly, were plaintiff an ordinary citizen, the governmental immunity act would generally bar her from suing Adelman for tort liability. However, the WPA explicitly includes the state in its definition of "employer," MCL 15.361(b); MSA 17.428(1)(b). Similarly, the statute includes an agent of an employer within its definition of an "employer." *Id.* Accordingly, we must determine whether the WPA operates as an exception to the governmental immunity act.

In an analogous case, *Madison v Detroit*, 208 Mich
App 356; 527 NW2d 71 (1995), rev'd on other grounds
450 Mich 976 (1996), this Court held that the Worker's
Disability Compensation Act (WDCA), MCL 418.101 *et
seq.*; MSA 17.237(101) *et seq.*, applies to governmental
agencies despite the broad provisions of the govern-
mental immunity statute.[3] The *Madison* Court relied
on three factors in reaching that conclusion. First, the
Court stated that, when the government is the plain-
tiff's employer, the governmental immunity statute
must be read in pari materia with the WDCA. *Id.*, p 360.
Second, the Court stated that the extension of reme-
dies to governmental employees under the WDCA is
consistent with the protection afforded to governmen-
tal employees against third parties provided by the
governmental immunity act. *Id.*, pp 360-361. Finally,
the Court stated that the WDCA "contains no language
freeing the government from its requirements, regula-
tions and restraints in other areas, but generally
treats it as any other employer." *Id.*, p 361.

All of those factors apply here. First, like *Madison*,
this case concerns the duties of a governmental
agency as an employer. Accordingly, the governmen-
tal immunity statute must be read in pari materia with
the WPA. Second, the extension of remedies under the
WPA is consistent with the protections that the govern-
mental immunity act offers to governmental employ-
ees against third parties. Third, the WPA not only "con-
tains no language freeing the government from its

---

[3] In summarily reversing this Court's decision, the Supreme Court did
not address the issue whether there is an exception to governmental
immunity under the WDCA. *Madison, supra.* Rather, the Supreme Court
stated that the facts of that case did not constitute an intentional tort
under the WDCA as a matter of law. *Id.*

requirements, regulations and restraints in other areas," *id.*, but it explicitly includes the state in its definition of "employer." MCL 15.361(b); MSA 17.428(1)(b). Accordingly, the WPA treats the state like any other employer.

In addition, where there are two acts or provisions, one of which is special and particular and certainly includes the matter in question and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special act must be taken as intended to constitute an exception to the general act, because the Legislature is not to be presumed to have intended a conflict. *Driver, supra,* p 17. We hold that the specific duties that the WPA requires of state entities and their agents constitute an exception to the general rule established by § 7 of the governmental immunity act. *Madison, supra,* pp 360-361; *Driver, supra,* p 17. Accordingly, Adelman's claim must fail.

### XVIII

Adelman argues that insofar as the WPA abrogates governmental immunity, it violates the Title-Object Clause of the Michigan Constitution. We disagree. Const 1963, art 4, § 24 provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

When assessing a title-object challenge to the constitutionality of a statute, all possible presumptions should be afforded to find constitutionality. *Lawnichak v Dep't of Treasury,* 214 Mich App 618, 620; 543

NW2d 359 (1995). The clause is violated only where the subjects are so diverse in nature that they have no necessary connection. *Id.* The purpose of the clause is to prevent the Legislature from passing laws not fully understood, to ensure that both the legislators and the public have proper notice of legislative content, and to prevent deceit and subterfuge. *Id.*, p 621. If the act centers on one main general object or purpose that the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met. *Ace Tex Corp v Detroit*, 185 Mich App 609, 615; 463 NW2d 166 (1990). A determination whether a statute violates the Title-Object Clause is subject to review de novo on appeal. *Mooahesh v Dep't of Treasury*, 195 Mich App 551, 562; 492 NW2d 246 (1992).

Here, the purpose of the WPA is to protect employees who suffer retaliation for reporting violations of law. *Dudewicz, supra*, p 77. The inclusion of the state within the definition of employer is merely incidental to this purpose. Accordingly, the WPA does not violate the Title-Object Clause of the constitution. *Lawnichak, supra*, pp 620-621; *Ace Tex, supra*, p 615.

XIX

Adelman argues that the trial court abused its discretion by denying his motions for summary disposition, a directed verdict, and JNOV where plaintiff failed to prove that she engaged in protected activity or made any report to higher authority, to establish any nexus between her alleged protected activity and the

nonrenewal of her appointment, or to demonstrate pretext. We disagree.

Adelman's argument focuses entirely on the evidence that plaintiff presented at trial. Accordingly, the portion of this issue dealing with Adelman's motion for summary disposition has been abandoned on appeal as being insufficiently briefed. *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 300; 553 NW2d 387 (1996). The standards of review for the denial of a motion for a directed verdict and for the denial of a motion for JNOV were set forth in issue V. See *Hatfield, supra*, p 325; *Severn, supra*, p 412.

In order to establish a prima facie case under the WPA, the plaintiff must establish: (1) that plaintiff was engaged in protected activities as defined by the act; (2) that plaintiff was subsequently discharged, threatened, or otherwise discriminated against; and (3) that a causal connection existed between the protected activity and the discharge, threat, or discrimination. MCL 15.362; MSA 17.428(2); *Terzano, supra*, p 526; *Hopkins v Midland*, 158 Mich App 361, 378; 404 NW2d 744 (1987). The determination whether the evidence established a prima facie case under the WPA is a question of law to be determined de novo. *Terzano, supra*, p 526. The WPA protects an employee who

> reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362; MSA 17.428(2).]

Here, plaintiff made several reports of "a violation or a suspected violation of a law or regulation or rule." Plaintiff testified that she reported her allegations to many University of Michigan employees: Pam Donaldson, a personnel officer; Dr. Achenbaum, a faculty member of the IOG; Adelman, the director of the IOG; and Verbrugge, the person whom Adelman appointed to investigate plaintiff's allegations. Plaintiff told these employees that Perlmutter was trying to take credit for her research, that Perlmutter was breaking employment contracts with her, and that Perlmutter had stolen data and a test instrument library from her.

Adelman's argument would have this Court hold that larceny, among other applicable regulations and statutes, is not "a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body." *Id.* We decline to adopt Adelman's position. See MCL 750.356 *et seq.*; MSA 28.588 *et seq.*; *Dudewicz, supra,* p 75 (WPA not limited to violations of laws closely connected with the employment setting). In addition, whether plaintiff sought personal gain in making her reports, rather than the public good, is legally irrelevant and need not be addressed except to note that the reporting of misconduct in an agency receiving public money is in the public interest. Accordingly, when the evidence is viewed in the light most favorable to plaintiff, *Hatfield, supra,* p 325; *Severn, supra,* p 412, she made a report of a violation or a suspected violation of a law or regulation or rule.

Second, the WPA requires that a report of a violation or suspected violation be made to a "public body."

MCL 15.362; MSA 17.428(2). Remedial statutes such as the WPA are to be liberally construed in favor of the persons intended to be benefited. *Dudewicz, supra,* p 77. Although Adelman argues that plaintiff's reports had to be made to a "higher authority," the University of Michigan satisfies the statutory definition of a public body. MCL 15.361(d)(iv); MSA 17.428(1)(d)(iv); Const 1963, art 8, § 4. In addition, plaintiff's allegations triggered a University of Michigan police investigation. Finally, unlike the plaintiff police officer in *Dickson v Oakland Univ,* 171 Mich App 68, 71; 429 NW2d 640 (1988), it was not plaintiff's "job function" to report violations or suspected violations of law to her employer.

Finally, there was sufficient evidence regarding the nexus between the retaliatory action and the protected activity and regarding whether Adelman's alleged nondiscriminatory reasons for his conduct were a pretext. When Adelman was asked if he had repeatedly expressed to plaintiff the need for her to drop the charges, he replied, "In the context of refocusing her energies on her publication record, yes." Adelman admitted that he told plaintiff that she was jeopardizing her career by focusing on the conflict with Perlmutter. Finally, Adelman stated:

> I finally got to the point where I had to use threats rather than begging and cajoling. You know, "Carolyn, please, publish your research." To Carolyn: "Publish your research already or you're gone." Yes. Yes, that's exactly what I did.

Viewing this evidence in a light most favorable to plaintiff, *Hatfield, supra,* p 325; *Severn, supra,* p 412, a jury could reasonably find that Adelman threatened to terminate plaintiff's employment if she did not

drop the charges and that the issue of publication was a pretext.

The trial court did not abuse its discretion in denying Adelman's motions for a directed verdict and JNOV. *Hatfield, supra,* p 325; *Severn, supra,* p 412.

XX

Adelman argues that the trial court should have granted his motion for JNOV because plaintiff's construction of the WPA is unenforceable. We disagree. The gist of plaintiff's claim was that Adelman retaliated against plaintiff for raising questions that triggered a university investigation. Plaintiff does not contest whether the investigation was begun pursuant to regulation. Plaintiff did not bring a claim under the Copyright Act. Nor did plaintiff sue to recover lost intellectual property such that her claim would chill expression. Although plaintiff complained of lost intellectual property when she spoke with Adelman, that property was not the subject of plaintiff's complaint against Adelman in this suit. Adelman's argument is without merit.

XXI

Adelman argues that the trial court failed to properly instruct the jury about the quantum of proof. To preserve for review an issue concerning a jury instruction, a party must object on the record before the jury retires to deliberate. MCR 2.516(C); *Mina, supra,* p 680. Here, despite a lengthy conference concerning the jury instructions, Adelman did not raise these objections to the instructions before the jury's retirement to deliberate. Rather, defendant raised these objections as part of his motion for a new trial.

This Court will review an unpreserved issue concerning an error in jury instruction only when necessary to prevent manifest injustice. *Id.* Manifest injustice occurs where the defect in instruction is of such magnitude as to constitute plain error, requiring a new trial, or where it pertains to a basic and controlling issue in the case. *Id.*

Here, this Court has previously required that a plaintiff establish a claim under the WPA by a preponderance of the evidence. See *Hopkins, supra,* p 378. In any case, the WPA protects an employee who "reports or is about to report" a violation or suspected violation. MCL 15.362; MSA 17.428(2). The WPA then states that the clear and convincing evidence standard applies to the "about to report" element. MCL 15.363(4); MSA 17.428(3)(4). The language of the statute is clear and unambiguous that the clear and convincing standard applies to the "about to report" element of MCL 15.362; MSA 17.428(2) only, and not to other elements of a plaintiff's claim. See Schlinker & Szymanski, *Michigan Whistle-Blowers' Protection Act: A Practitioner's Guide,* 74 Mich B J 1192, 1193 (1995). Failure to review this issue would not result in manifest injustice. *Mina, supra,* p 680. Similarly, failure to review the issue of the trial court's failure to instruct the jury sua sponte about the elements of the WPA would not result in manifest injustice. *Id.*

### XXII

Adelman argues that the trial court improperly deferred to the jury's findings. We disagree. The fact that the trial court denied Adelman's motions for a directed verdict and JNOV, but sitting as the Court of Claims found in favor of the university, reflects the

trial court's understanding of the differing standards applicable to those separate roles. A trial court sitting as the Court of Claims is not obligated to return a verdict consistent with the jury's verdict in a circuit court action joined with a Court of Claims action. *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 134-135; 544 NW2d 692 (1996). Accordingly, the trial court did not act inconsistently.

## XXIII

Adelman argues that he is entitled to a new trial because of several evidentiary errors. We disagree. Objections to the admission of evidence may not be raised for the first time on appeal absent manifest injustice. *In re Forfeiture of $19,250, supra,* p 32.

Here, there were no objections to plaintiff's testimony about an alleged "fraud buster," her testimony that a staff member of Congressman John Dingell maintained an open file against the University of Michigan, or plaintiff's testimony "of vague stories." In addition, only Perlmutter's counsel objected to plaintiff's testimony regarding the comments of Dr. Achenbaum.[4] Adelman has waived each of these issues. *Id.* Regarding Perlmutter's Exhibit 10, the discussion at trial indicates that the exhibit was part of an earlier exhibit offered by plaintiff. The earlier exhibit was excluded on objection from Adelman's counsel. Error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence. *Harville, supra,* p 324.

Plaintiff's testimony regarding Marianne Zorza was responsive to the question posed by counsel for Perl-

---

[4] In any case, there is no merit to this issue. See issue vi.

mutter. The trial court appropriately limited any resulting prejudice by directing counsel to move to another area of questioning. See *Price, supra,* p 466. Similarly, the trial court did not abuse its discretion in limiting the cross-examination of Chiodo. MRE 611(b); *Wischmeyer, supra,* pp 474-475; see issue VI.

The trial court did not abuse its discretion in denying Adelman's motion for a new trial. *Mahrle, supra,* p 351.

### XXIV

Adelman argues that the trial court erred in failing to grant remittitur or a new trial. We disagree. First, the amount was not greater than the highest amount the evidence can support. MCR 2.611(E)(1); *Palenkas, supra,* pp 531-532. Although the issue was disputed, plaintiff presented two expert witnesses who testified that plaintiff suffered from posttraumatic stress disorder. Second, the trial court did not abuse its discretion in determining that the jury's verdict was not motivated by impermissible considerations. *Palenkas, supra,* p 532; *Howard, supra,* p 436. Regarding the failure to distinguish between past and future damages, Adelman did not object to the jury verdict form and has waived this issue. *Harville, supra,* p 324.

Adelman also argues that emotional distress damages are not awardable under the WPA. We disagree. In *Howard, supra,* pp 435-436, this Court held that damages for mental anguish, emotional distress, and humiliation are awardable in a claim under the Civil Rights Act. Here, the WPA provides that a "person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both." MCL 15.363(1); MSA 17.428(3)(1). The statute

then defines damages as "damages for injury or loss caused by each violation of this act, including reasonable attorney fees." MCL 15.363(3); MSA 17.428(3)(3). The Civil Rights Act uses identical language in describing the remedy for a person alleging a violation of the action and in providing a definition of damages. MCL 37.2801(1) and (3); MSA 3.548(801)(1) and (3). Given the fact that the relevant language of the WPA is identical to that of the Civil Rights Act, we hold that emotional distress damages are awardable in a claim brought under the WPA. *Howard, supra,* pp 435-436; see *Skene v Fileccia,* 213 Mich App 1, 6; 539 NW2d 531 (1995). Accordingly, Adelman's claim must fail.

XXV

On cross appeal, plaintiff argues that the trial court abused its discretion by denying attorney fees on the ground that plaintiff received a substantial judgment. We disagree. Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception. *Yuhase v Macomb Co,* 176 Mich App 9, 14; 439 NW2d 267 (1989). The decision whether to award attorney fees is within the trial court's discretion and will be reviewed on appeal for abuse of discretion. See *Sanchez v Lagoudakis (On Remand),* 217 Mich App 535, 557; 552 NW2d 472 (1996); *Yuhase, supra,* p 15.

Here, the WPA states that the "court may also award . . . reasonable attorney fees . . . if the court determines that the award is appropriate." MCL 15.364; MSA 17.428(4). If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction

is not permitted. *Tryc, supra,* p 136. The term "may" in a statute ordinarily designates a permissive provision. *Jordan v Jarvis,* 200 Mich App 445, 451; 505 NW2d 279 (1993). Here, that rule of construction is strengthened by the Legislature's use of the conditional word "if." It follows logically from the WPA's language that if the trial court determines that an award of attorney fees is not "appropriate," then it may choose not to award reasonable fees. See *Eide v Kelsey-Hayes Co,* 154 Mich App 142, 161; 397 NW2d 532 (1986), aff'd in part and rev'd in part on other grounds 431 Mich 26; 427 NW2d 488 (1988); *Melchi v Burns Int'l Security Services, Inc,* 597 F Supp 575, 586 (ED Mich, 1984) (denying attorney fees in a case brought under the WPA); but see *Kindig v Rockwell Int'l Corp,* 709 F Supp 787, 792 (ED Mich, 1989) (predicting that the Michigan Supreme Court would reject the reasoning in *Eide* in civil rights cases).

Because of the private nature of plaintiff's claim, and because of the monetary nature of her damages, this is not a case where it would have been difficult for plaintiff to obtain and compensate competent counsel without some guarantee that her counsel could recover attorney fees and costs if successful. See *Eide, supra,* p 161; see also *Howard, supra,* p 441; *Yuhase, supra,* pp 13-14. In addition, the trial court properly considered the existence of the contingent fee arrangement between plaintiff and her counsel as "merely one of the factors to be considered" in determining whether to award attorney fees. *Wilson v General Motors Corp,* 183 Mich App 21, 42; 454 NW2d 405 (1990). Accordingly, the trial court did not abuse its discretion in denying plaintiff's request for attorney fees.

XXVI

Plaintiff argues that the trial court erred in refusing to grant plaintiff interest from the date of the filing of plaintiff's original complaint. We agree in part. Here, plaintiff did not name Adelman as a defendant until the first amended complaint, which was filed on April 1, 1991. Although plaintiff did not add a WPA claim against Adelman until her fourth amended complaint, the relation back of amendments for other purposes is not analogous to the purposes of prejudgment interest. *Rittenhouse, supra,* p 218 (RILEY, J.). Rather, "the complaint" for purposes of this statute is the "formal complaint filed against the defendant upon whom the prejudgment interest is being taxed." *Id.,* p 217. Accordingly, we remand with instructions that the trial court recalculate prejudgment interest from the date of the filing of the first amended complaint. In addition, as held in issue XII, plaintiff is entitled to prejudgment interest for future damages when the suit does not result from personal bodily injury. *Paulitch, supra,* pp 662-663.

XXVII

Finally, plaintiff argues that the trial court erred in dismissing her whistleblower claim against defendant Verbrugge because the fraudulent concealment statute, MCL 600.5855; MSA 27A.5855, tolled the running of the statute of limitations. We disagree.

Under the fraudulent concealment statute, the limitation period is tolled when a party conceals the fact that the plaintiff has a cause of action. *Sills v Oakland General Hosp,* 220 Mich App 303; 559 NW2d 348 (1996). The plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudu-

lent concealment and must prove that the defendant committed affirmative acts of misrepresentations that were designed to prevent subsequent discovery. *Id.*

Here, plaintiff failed to plead sufficient facts to show fraudulent concealment. In addition, plaintiff fails to cite any record evidence that Verbrugge actively concealed the report from her. On the other hand, the record does show that plaintiff knew of the report and that it was critical of her. The trial court did not err in granting Verbrugge's motion for summary disposition. *Id.*; *Witherspoon v Guilford*, 203 Mich App 240, 248; 511 NW2d 720 (1994).

DOCKET NO. 176940

XXVIII

Plaintiff argues that the trial court clearly erred in finding that plaintiff had failed to establish that defendant board of regents violated the WPA. We disagree.

Under the WPA, the plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Hopkins, supra,* p 378. If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendant carries this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for discrimination. *Id.* The plaintiff may meet her burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.,* p 380. After

reviewing the record, we believe that the trial court did not clearly err in finding that the board of regents had showed legitimate, nondiscriminatory reasons for the adverse actions and that plaintiff had not adequately showed pretext. To the extent that plaintiff argues that the trial court erred by employing the wrong burden of proof, she failed to preserve this issue by not raising it in the statement of questions presented. MCR 7.212(C)(5); *Marx v Dep't of Commerce*, 220 Mich App 66, 81; 558 NW2d 460 (1996).

### XXIX

Plaintiff argues that the court should order appropriate injunctive relief. In addition, the board of regents makes several arguments on cross appeal. In light of our resolution of the previous issue, these issues are moot.

In Docket No. 175485, we affirm in part and remand for a recalculation of the amount of prejudgment interest to which plaintiff is entitled. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

In Docket No. 175857, we affirm in part and remand for a recalculation of the amount of prejudgment interest to which plaintiff is entitled. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

In Docket No. 176940, we affirm. The board of regents, being the prevailing party, may tax costs pursuant to MCR 7.219.